Liane Rowena Estrella REYES, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 81-3157.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 14, 1982.

Decided Nov. 18, 1982.

598

Douglas S. Weigle, Cincinnati, Ohio, for petitioner.

Lloyd Warfield, I.N.S., James C. Cissell, U.S. Atty., Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, Robert Kendall, Jr., James P. Morris, Lauri Steven Filppu, Dept. of Justice, Gen. Litigation and Legal Advice Section, Crim.Div., Washington, D.C., for respondent.

Before KEITH and JONES, Circuit Judges, and WEICK, Senior Circuit Judge.

PER CURIAM.

This is an appeal by petitioner, 22-year-old Liane Reyes, of a denial of her petition for asylum or the withholding of deportation under § 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h). Reyes is a native and citizen of the Philippines. The Immigration Appeals Board affirmed the decision of the Immigration Judge, dismissed the appeal, and ordered the petitioner to depart the United States within thirty days of its decision. This appeal followed. We reverse.

Petitioner entered the United States on August 15, 1975 as a nonimmigrant exchange visitor under the Youth for Understanding exchange student program and pursuant to 8 U.S.C. § 1101(a)(15)(J). She was authorized, by a "J" visa, to remain in the United States until September 1, 1976, but remained here well beyond that date.

On November 14, 1979, the INS issued an Order to Show Cause and Notice of Hearing in which it was charged that Reyes was subject to deportation under § 241(a)(2) of the Immigration Act, 8 U.S.C. § 1251(a)(2). The hearing began on February 26, 1980, and was completed on April 22, 1980. While petitioner admitted that she was deportable, she asked for political asylum and withholding of deportation. She claimed that if she returned to the Philippines she would be persecuted for her political beliefs.

The petitioner testified at the hearing, and submitted documents relating to the request for asylum. Before the close of the hearing, the Immigration Judge granted Reyes fifteen days to submit any additional documents. On July 29, 1980, the Immigration Judge, in a written opinion, denied the application for asylum, and ordered that the petitioner be granted voluntary departure, in lieu of deportation, without expense to the government. That departure was to take place before August 29, 1980.

In support of her application for political asylum, Reyes testified that, when 13 or 14

years old, she participated in anti-Marcos[1] activities and that, in 1974 or 1975, she was taken from school, detained and questioned for two or three days. She further testified that the school officials wanted her to stop speaking out against the government, and that after she received that warning, her grades went down. She stated that she had been expelled from two schools, but gave no reason for the expulsions.

In addition, she admitted that she had been disciplined several times in school for disrupting classes and that her speeches were sometimes uninvited and in disruption of the class. Furthermore, she stated that she has family in the Philippines, none of whom have been persecuted. She also stated that the program upon which she came to the U.S. was, in part, probably funded by the government and that she was not persecuted, nor would she be, for her religion alone.

In addition to this testimony at trial, Reyes introduced a series of documents. First, she offered a series of articles from newspapers and magazines describing that the Philippines was lacking in human and civil rights. In addition, there were affidavits concerning trips of two persons to the Philippines and the general tenor of Philippine society. The only documents that dealt directly with Reyes were a letter by James Reuter, Director of Mass Media for the Catholic Church in the Philippines and statements by Robert Baylor. Reuter's letter described particular incidents of persecution and violence against others, and advised she should not return to the Philippines. Baylor's letter was also quite descriptive.

The Immigration Judge denied the petitioner's request for asylum, stating that though the evidence introduced in the record and at the hearing shows that "the present Philippine government fails to provide the freedoms and other constitutional guarantees to be found in the United States," the true test in asylum cases is whether the petitioner can "establish that she will be singled out for persecution on the basis of her race, religion, political opinion, nationality (ethnicity) or membership in social organizations."

On review we must determine whether the Board applied the correct legal standard below and whether the Board's decision is supported by substantial evidence in the record as a whole.

■ We hold the Board correctly stated that the burden on the person seeking asylum under § 243(h) is to show that, if deported, he or she would be singled out for persecution based on his race, religion, nationality, membership in a particular social group, or political opinions. *McMullen v. Immigration and Naturalization Service,* 658 F.2d 1312 (9th Cir.1981). Yet, it also stated that to meet that burden, "the alien must demonstrate a clear probability that he will be persecuted if returned to his country. *Cheng Kai Fu v. INS,* 386 F.2d 750 (2d Cir.1967), *cert. denied,* 390 U.S. 1003 [88 S.Ct. 1247, 20 L.Ed.2d 104] (1968)."

■ It is important to note that there were substantial changes in the Immigration Act since *Cheng Kai* had been decided. In fact, the Second Circuit has suggested that the "clear probability" test is inconsistent with the tenor and spirit, if not the language, of the new provisions. In *Stevic v. INS,* 678 F.2d 401 (2d Cir.1982), the Second Circuit wrote:

> Both the text and history of that document [the new Act] strongly suggest that asylum may be granted, and under Section 243(h), deportation must be withheld, upon a showing *far short of a "clear probability"* that the individual will be singled out for persecution. *Id.* at 409 (emphasis added).

Since the Board applied the more stringent clear-probability test, the holding cannot stand. It is admitted that there is some evidence that Reyes may be subject to persecution. All the Board held was that she had not shown, by a clear probability, that

---

1. President Ferdinand E. Marcos is the leader of the present martial law government in the Philippines.

she would specifically be subject to it. Since something less than that showing is now required, we find that the Board erred.

In considering the petitioner's evidence for sufficiency, we must analyze the two sub-issues involved. They are, first, the kind of evidence needed, and second, whether it was sufficient to support the petitioner's claim.

■ The INS cites two Ninth Circuit cases for the proposition that some objective evidence concerning the likelihood of persecution is needed. *Moghanian v. Department of Justice*, 577 F.2d 141 (9th Cir.1978) and *Pereira v. INS*, 551 F.2d 1149 (9th Cir. 1977). These cases do support the view that one must have more than one's own testimony to support a claim under § 243(h). Yet, it is not clear what kind of objective evidence is needed. Obviously, we do not wish to force the INS to accept potentially self-serving statements as true in granting asylum under § 243(h). On the other hand, it is difficult to see what more than what was offered here we would require, short of proof of actual persecution after the fact. Here, Reyes offered affidavits from relatives, general newspaper and documentary reports concerning the general conditions in the Philippines and a letter from the Director of Mass Media of the Philippine Catholic Church. Finally, there is her own testimony.

We hold that under the circumstances here, the testimony of the individual *and* documents offered indicating a repressive environment and suggesting that petitioner *not* return to the Philippines is sufficient to bring her risk within the tenor and spirit of the new provisions of the Act. *Stevic v. INS, supra; McMullen, supra.*

We find no evidence in the record which detracts from the force of the evidence offered by and on petitioner's behalf. Thus, in considering the record as a whole, we not only find that there is not substantial support in the record for the conclusions of the Board, but that overwhelming evidence supports petitioner's claim.

Accordingly, the order of the Board is REVERSED and the case REMANDED to the Board with directions to grant the petition.