**Ghazwan and Nashwan DALLY, Tarik Jerjis Khamou and Sabiha Hermiz, Asam J. Satto and Lamia K. Satto, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Nos. 83–3503, 83–3505 and 83–3506.**

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1984.

Decided Sept. 20, 1984.

Fakhri W. Yono, argued, Yono & Sarafa, P.C., Southfield, Mich., for petitioners.

I.N.S. Cincinnati, Ohio, Robert Kendall, Jr., Office of Immigration Litigation Crim. Div., Thomas W. Hussey, Susan Heftel, Washington, D.C., Christopher Barnes, U.S. Atty., Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, for respondent.

Before MARTIN, Circuit Judge, CELE-BREZZE, Senior Circuit Judge, and McRAE, Chief District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

The three groups of petitioners in this consolidated appeal, all Iraqi citizens,[1] seek review of an order of the Immigration and Naturalization Service denying their applications for political asylum and withholding of deportation pursuant to sections 208 and 243(h) of the Immigration and Nationality

---

* Honorable Robert M. McRae, Jr., Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

1. Iraq severed diplomatic relations with the United States on June 6–7, 1967 during the six-day war between Israel and its Arab neighbors. *See* United States Department of State Bureau of Public Affairs, Background Notes on Iraq, p. 7, August, 1982 ed.

Act of 1952, 8 U.S.C. §§ 1158 and 1253(h) (1976 ed.), as amended by section 203(e) of the Refugee Act of 1980, Pub.L. 96–212, 94 Stat. 107.

## I.

The first petitioners, brothers Ghazwan Dally and Nashwan Dally, entered the United States on August 21, 1979 as non-immigrant visitors for pleasure, pursuant to section 101(a)(15)(B) of the Act, 8 U.S.C. § 1101(a)(15)(B). Both were authorized to stay until January 4, 1980. On January 4, 1980, each filed a claim for political asylum with the Immigration and Naturalization Service. In their application, they stated that they feared persecution if returned to Iraq due to their Catholic religion and Chaldean ethic origin. They also alleged that their cousin had been harassed by Iraqi authorities because of his refusal to join the Baath Party.

The Dally applications were forwarded to the State Department after an interview with an Immigration and Naturalization Service examiner. In an advisory letter, the State Department informed the Immigration and Naturalization Service that the petitioners had failed to establish a well-founded fear of persecution upon return to Iraq. On January 26, 1981, the Immigration and Naturalization Service district director denied the petitioners' request for asylum because they had failed to establish a well-founded fear of persecution upon their return to Iraq.[2] In support of this determination, the district director found petitioners had failed to submit any evidence or documentation in support of their claims. The district director noted that they had not stated in their interview that they belonged to any organization hostile to the Iraqi government, nor had they spoken out against the Iraqi regime. Finally, the director found that petitioners could not cite any specific incidents of persecution against themselves.

On April 14, 1981, the Immigration and Naturalization Service issued Orders to Show Cause and Notice of Hearing. The Service charged that petitioners were subject to deportation under section 241(a)(2) of the Act because petitioners were no longer authorized to remain in the United States. A consolidated hearing on this order was held on May 7, 1981, in which petitioners appeared with counsel. At that hearing, petitioners requested the withholding of their deportation pursuant to section 243(h) and they again sought renewal of their asylum applications.[3] In support of their claims, they introduced their asylum applications and a number of media articles concerning human rights violations by the Iraqi government. No objective testimony, however, was introduced to support their allegations that they personally would be singled out for persecution. In light of this lack of objective testimony, the immigration judge [4] denied their applications for asylum and the withholding of deportation. This determination was upheld by the Board of Immigration Appeals, ruling that, whether judged by a standard of "clear probability," "good reason," or "realistic likelihood," the petitioners had failed to

---

**2.** Under 8 U.S.C. § 1158(a) the Attorney General is directed to establish procedures permitting aliens either in the United States or at its borders to apply for asylum. *See Immigration and Naturalization Service v. Stevic,* —— U.S. ——, · ——, 104 S.Ct. 2489, 2497 n. 18, 81 L.Ed.2d 321 (1984). Under section 1158(a), an alien "may be granted asylum in the discretion of the Attorney General if it is determined that the alien is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A)." Under these regulations, no appeal shall lie from the decision of the district director. 8 C.F.R. § 208.8(c) (1983).

**3.** Under 8 C.F.R. § 208.3(b) (1983), requests for asylum made after the institution of deportation

proceedings "shall also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act." *See Stevic, supra* n. 18; *Shamon v. Immigration and Naturalization Service,* 735 F.2d 1015, 1016 (6th Cir.1984).

**4.** Under 8 U.S.C. § 1158(a) Congress has granted the Attorney General the authority to establish procedures for the adjudication of requests for asylum. Under this authority the Attorney General has designated that an immigration judge is a "special inquiry officer" as that term is defined in 8 U.S.C. § 1101(b)(4). *See* 8 C.F.R. § 1.1(1).

establish their entitlement to relief under either section 208(a) or section 243(h).

## II.

Petitioners, Tarik Jerjis Khamou and Sabiha Hermiz, husband and wife, entered the United States with their three minor children on October 29, 1980 as non-immigrant visitors. They were authorized to remain until January 28, 1981. Khamou's mother and two of his sisters and one brother were permanent residents of the United States. A second brother has applied for asylum and a younger sister is seeking permission to remain in the United States, although the record is unclear concerning her present status.

On January 2, 1981, petitioners filed a petition for asylum, including their three minor children. In support of their application, they stated fear of persecution in Iraq due to their Catholic religion and opposition to the Iraqi Baath Party. Khamou stated that in 1977 he was seized by members of the Baath Party and interrogated and "pushed around" for his refusal to join the party. He was released shortly thereafter. Two months later, Khamou was discharged from his employment as a deliveryman, even though he had held the position for seventeen years. Khamou also stated that his sister had been seized and interrogated by the Iraqi secret police on several occasions for her failure to join the Baath Party. Further, Khamou stated that his eldest daughter, while attending school, was harassed into joining the youth division of the party by threats to jail her father. Khamou also noted that he has had difficulty running his liquor business and was forced to bribe an Iraqi foreign service officer in order to secure his passport to the United States.

Following the same administrative procedure used in the Dally case, Khamou and Hermiz's application for asylum was denied by an Immigration and Naturalization Service district director after an interview and a negative recommendation from the State Department. This occurred on September 2, 1981. On December 2, an Order to Show Cause was issued by the Immigration and Naturalization Service charging them with being deportable aliens. A hearing was held on February 16, 1982, at which time they were represented by counsel. At this hearing, petitioners requested the withholding of deportation under section 243(h), as well as a renewal of their asylum application. In support of their claims, Khamou repeated the earlier allegations.

Despite this testimony, petitioners' requests for asylum and the withholding of deportation were denied. In a written opinion dated April 12, 1982, the immigration law judge held that petitioners had not shown that there is a "clear probability" that they would be persecuted or suffer loss of freedom on account of race, religion, political opinion, or membership in a particular social group if forced to return to Iraq. In short, the immigration judge found that petitioners' claims were too generalized and unsupported by objective evidence. This determination was upheld by the Board of Immigration Appeals. The Board found that petitioner's claim, under any standard of review, failed to establish the requisite degree of evidence necessary for the granting of asylum or the withholding of deportation.

## III.

In the third case, Asam J. Satto and Lamia Satto, husband and wife, entered the United States on June 4, 1980 as nonimmigrant visitors and were authorized to remain until December 3, 1980. On July 29, 1980, Asam Satto filed an application for asylum with the Immigration and Naturalization Service, including his wife and a minor child. In his application Satto alleged that he feared persecution by the Iraqi government if forced to return to Iraq. Satto stated that he was a Chaldean Catholic and opposed to the ruling Iraqi Baath Party.[5] Also, Satto stated that

---

**5.** As noted by the immigration law judge, the record is unclear as to whether Satto voluntarily

joined the Baath Party, joined as a result of

sometime in 1980 he was detained, interrogated and severely beaten by Iraqi officials for his refusal to join the Baath Party.

Satto's request for asylum was forwarded to the State Department after an initial interview with an Immigration and Naturalization Service examiner. In the return letter to the Immigration and Naturalization Service dated July 7, 1981, the State Department stated that petitioners had failed to establish a well-founded fear of persecution upon return to Iraq because of their religion. On November 4, 1981, an Immigration and Naturalization Service district director denied petitioner's application for asylum due to their failure to establish a well-founded fear of persecution.

On February 2, 1982, Orders to Show Cause and Notice of Hearing were issued charging petitioners as deportable aliens. On March 20, a hearing was held, where petitioners were represented by counsel. At the hearing they requested the withholding of deportation and also requested that their asylum application be renewed. In support of these requests, they introduced their asylum application, a document characterized by petitioners' counsel as relating to the "takeover of the churches by the Iraqi government," and other documentary evidence concerning the internal affairs of Iraq. None of these documents, however, addressed the individual claims or allegations of the petitioners.

In a written decision dated April 13, 1982, the petitioners' application for asylum and withholding of deportation was denied. The immigration law judge found that petitioners' claims of persecution were generalized and unsupported by objective evidence. This determination was upheld by the Board of Immigration Appeals which also found that petitioners had failed to carry their burden of proof under any standard of review.

## IV.

*Immigration and Naturalization Service v. Stevic,* —— U.S. ——, ——, 104 S.Ct.

governmental coercion, or refused to join de-

2489, 2492, 81 L.Ed.2d 321 (1984), held that "an alien must establish a clear probability of persecution to avoid deportation under § 243(h)" of the Act. *Stevic,* 104 S.Ct. at 2492. Although the Court "deliberately avoided any attempt to state the governing standard [under section 243(h)] beyond noting that it requires that an application be supported by evidence establishing that *it is more likely than not that the alien would be subject to persecution,"* *id.* at 2501 (emphasis added), it is evident the Court rejected Stevic's contention that the "clear probability" standard could be met if an alien could show "some objective basis in reality for the fear." *Id.* at 2498.

As we read *Stevic* and the earlier cases dealing with deportation, we conclude that the "clear probability" test requires at least that an alien show that it is more likely than not that *he as an individual* will be subject to persecution if forced to return to his native land. A "clear probability" of persecution cannot be proven by the introduction of documentary evidence, not pertaining to the applicant individually, that depicts a general lack of freedom or the probability of human rights abuses in the alien's native land. *See Shamon v. Immigration and Naturalization Service,* 735 F.2d at 1015, 1017 (6th Cir.1984); *Kashani v. Immigration and Naturalization Service,* 547 F.2d 376, 380 (7th Cir. 1977); *Cheng Kai Fu v. Immigration and Naturalization Service,* 386 F.2d 750, 753 (2d Cir.1967), *cert. denied,* 390 U.S. 1003, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968) (aliens status as exiles from China will not distinguish them from thousands of others, and the difficulties they claim are shared by many others; those difficulties do not amount to the kind of "particularized persecution" that justifies a stay of deportation). Instead, the alien must introduce sufficient credible evidence that supports his individual claim of persecution. Of course, self-serving statements are not enough. A "clear probability" of persecution is "more than a matter of [an alien's] own conjecture." *Kashani,* 547 F.2d at

spite governmental harassment for him to join.

379; *see also Rejaie v. Immigration and Naturalization Service,* 691 F.2d 139, 145 (3d Cir.1982). An alien must show that he will be singled out for persecution or some other "special circumstances" before relief can be granted. *Chavez v. Immigration and Naturalization Service,* 723 F.2d 1431, 1434 (9th Cir.1984); *Martinez-Romero v. Immigration and Naturalization Service,* 692 F.2d 595, 595–96 (9th Cir. 1982). In sum, we believe the most reasonable standard is to require that an alien seeking the withholding of deportation pursuant to section 243(h) must advance some credible evidence that authenticates his subjective allegations of persecution.

■ Here, none of the petitioners have satisfied their burden of proof entitling them to relief under section 243(h).[6] Petitioners Ghazwan and Nashwan Dally stated they feared persecution in Iraq because of their Catholic religion and Chaldean ethnic origin. They also alleged that a cousin had been harassed by governmental authorities for refusing to join the Baath Party. Other than this, no other evidence was submitted to support their claims of particularized persecution. They did not state that they were members of organization considered hostile to the Iraqi government; nor did they introduce evidence which described conduct on their behalf which exhibited hostility toward the Iraqi government. Although a Detroit newspaper article was submitted which detailed harassment of United States immigrants of Iraqi origin critical of the Iraqi ruling party, the article did not refer to either of the petitioners. In sum, petitioners have not established by sufficient evidence a clear probability of persecution if forced to return to Iraq.

■ Similarly, petitioners Asam and Lamia Satto have also failed to show sufficient evidence entitling them to relief under section 243(h). As do the other petitioners, they also rely on their Catholic and Chaldean ethnic origin in their applications for withholding deportation. Yet, the testimony given at their deportation hearings does not indicate that Asam Satto or his family would be singled out for individual persecution. In fact, Satto conceded that he had been employed as a mailman with the Iraqi government for ten to fifteen years before his arrival in the United States. Moreover, Satto also admitted that he had not been terminated from his government employment, and had received vacation time from the government and a passport which permitted his trip to the United States. Satto's claims of discriminatory employment compensation because of his religious background is not enough to entitle an alien to relief under section 243(h). *Cf. Cheng Kai Fu v. Immigration and Naturalization Service,* 386 F.2d at 753 (claims of economic hardship shared by many others is not sufficient for relief under section 243(h)). Satto has also alleged that he was severely beaten by state police officials. However, there is absolutely no evidence to substantiate this statement. Although we acknowledge the seriousness of this allegation, the immigration laws as they exist today do not permit us to grant relief based on a petitioner's self-serving statements. Some type of specific evidence that an individual would be actually singled out for persecution must be produced before we can rule that the Attorney General has abused his discretion, or has rendered a decision that was arbitrary or capricious. *Henry v. Immigration and Naturalization Service,* 552 F.2d 130, 131 (5th Cir.1977). The record establishes that Satto has not shown a clear probability of persecution if compelled to return to Iraq.

■ On its face, the petition of Tarik Jerjis Khamou and Sabiha Hermiz is cer-

6. This appeal, as did *Stevic,* does not involve review of the petitioners' application for asylum. As we noted, requests for asylum made after the institution of deportation proceedings "*shall* also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act." 8 C.F.R. § 208.3(b) (1983). Because all of the petitioners requested renewal of their asylum applications at their deportation hearings, those requests must also be judged under the "clear probability" standard applicable for requests pursuant to section 243(h).

tainly more compelling than the others. They too are Chaldean Catholics. However, unlike the others, Khamou testified that he and his family have been the victims of repeated government harassment for their failure to join the Baath Party. Specifically, Khamou stated that in 1977 he was seized by members of the Baath Party and interrogated and "pushed around" for his refusal to join the party. He was released shortly thereafter. Two months later, Khamou was discharged from his employment as a deliveryman, even though he had held the position for seventeen years. Khamou also stated that his sister had been seized and interrogated by the Iraqi secret police on several occasions for her failure to join the Baath Party. Furthermore, Khamou stated that his oldest daughter while attending school, was harassed into joining the youth division of the party because of threats to jail her father. He testified that he has had difficulty running his liquor business and was forced to bribe an Iraqi officer to secure his passport to the United States.

Despite the compelling nature of these allegations, there is little in the record to authenticate the thrust of Khamou's claims. Although we do not question the sincerity of petitioner's allegations, there is no credible evidence in the record to confirm them. No affidavits from relatives or other knowledgable individuals were introduced which supported Khamou's claims. Nor did the record contain any other documentary evidence which corroborated Khamou's claims of particularized persecution. While we recognize the difficulties petitioners like Khamou and their counsel confront in substantiating their claims of persecution, *Reyes v. Immigration and Naturalization Service,* 693 F.2d 597, 600 (6th Cir.1982) (per curiam), something more than newspaper articles and pamphlets are necessary to show that the Board has abused its discretion in denying a petitioner's request for the withholding of deportation. Here Khamou's subjective testimony, as compelling as it is, was not verified by other evidence of a sufficient and credible nature which would justify our finding that

Khamou has established a clear probability of persecution upon his return to Iraq.

The petitions for review in Nos. 83–3503, 83–3505, and 83–3506 are denied.