**Ahmed Ali MOOSA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 84–3273.**

United States Court of Appeals,
Sixth Circuit.

Argued March 13, 1985.

Decided May 2, 1985.

Eugenia Hauber, argued, Cincinnati, Ohio, for petitioner.

I.N.S., Cincinnati, Ohio, Thomas W. Hussey, Robert Kendall, Jr., argued, Office of Immigration Litigation, Criminal Div., Washington, D.C., Christopher Barnes, U.S. Atty., Nicholas Pantel, Asst. U.S. Atty., Cincinnati, Ohio, for respondent.

Before MERRITT, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

PHILLIPS, Senior Circuit Judge.

This case is before the Court on the petition of Ahmed Ali Moosa, a 32 year old male, a native and citizen of Iraq, to review an order of the Board of Immigration Appeals dated February 3, 1984. The Board denied petitioner's motion to reopen deportation proceedings for reconsideration of the decision of the Board dated November 18, 1982. The earlier decision denied petitioner's renewed application for asylum or withholding of deportation pursuant to 8 U.S.C. §§ 1158 and 1253(h).

**I**

Petitioner first entered the United States as an exchange visitor/student on July 25, 1977. He returned to his native Iraq to visit his family for ten days in 1979 and re-entered the United States as a J–1 exchange visitor/student on September 15, 1979 pursuant to 8 U.S.C. § 1101(a)(15)(J). He was authorized by the Immigration and Naturalization Service (Service) to remain in the United States until December 29, 1980.

On October 16, 1980, before the expiration of his authorized stay in the United States, petitioner filed an application for asylum, alleging that he would be persecuted if he were to return to Iraq. The District Director denied the asylum application on January 26, 1981.

On September 23, 1981 the Service issued petitioner an Order to Show Cause and Notice of Hearing. This Order charged that petitioner was subject to deportation because he had remained in the United States for a longer time than permitted. Petitioner, through counsel, admitted these factual allegations. Petitioner renewed his request for political asylum and withholding of deportation. The applications and numerous documents, articles, Amnesty International Reports and other publications were submitted.

Petitioner testified that if he should return to Iraq, he feared for his freedom because of his religious belief as a Shiite Muslim and persecution for refusing to join the Baath Party. He averred that his uncle and three brothers had been imprisoned by the Baath Party and that five of his friends had been executed. Petitioner claimed that one of his brothers now is partially paralyzed as a result of beatings he received during imprisonment.

Petitioner admitted that he had not witnessed and had no personal knowledge of any of these alleged incidents or circumstances and that his assertions were based

solely on a letter from his sister. Except for a translation of his sister's letter, petitioner offered no witnesses or documents to corroborate the events upon which he based his claim. He admitted that when he visited his family in Iraq for ten days in 1979, he did not encounter any problems from the government or the Baath Party.

Petitioner testified that he is majoring in nuclear engineering in the United States, has received a Master's degree from the University of Cincinnati and is doing doctoral studies there. The Iraqi government is paying for his education in the United States and was supporting him even at the time of his immigration proceedings.

In response to cross-examination by the Service attorney and questions by the immigration judge, petitioner stated that he had never opposed the Iraqi government. At no time did he claim he had been mistreated or threatened with mistreatment.

In a written decision dated December 7, 1981, the immigration judge found petitioner to be deportable on the overstay charge and held that petitioner had failed to demonstrate a clear probability of persecution or loss of life if he were returned to Iraq. The court stressed that petitioner was provided financial support by the Iraqi government, had not demonstrated against or voiced opposition to that government and had cooperated with the government to receive funds to complete his education. The immigration judge denied petitioner's application for asylum and withholding of deportation.

In rejecting the documentary materials submitted by petitioner, the immigration judge stated:

The material submitted by the respondent, in pertinent part, contains affidavits signed by himself, media articles from various publications, magazines, and newspaper and several Amnesty International Reports. It is to be noted that the media publications referred to in the various exhibits fail to contain any specific reference to the respondent or any member of his family. Primarily, the historical references are generalized information and data and describe what happened on certain dates to the parties involved and in some cases represent only the opinions of the authors who prepared the material.

Petitioner was granted thirty days in which to depart voluntarily in lieu of enforcement by the Service of the order of deportation.

On December 28, 1981, petitioner perfected an appeal to the Board of Immigration Appeals (Board). By a decision dated November 18, 1982, the Board dismissed petitioner's appeal, stating:

The Notice of Appeal (Form I–290) merely states that the immigration judge erred because respondent fears persecution in Iraq. He requested until February 11, 1982, to submit a brief, but has failed to do so.

The only evidence of particularized persecution offered merely evidences the political upheaval in the respondent's homeland which affects the population as a whole and is insufficient for asylum and section 243(h) relief. [citation omitted] He claims that he will be persecuted because of his Shiite Muslim religion and submitted extensive evidence regarding the Iraqi Baath Party's persecution of its opponents. Yet, he has never participated in any overt anti-government activities, nor has he ever been singled out by the government as an opponent. Rather, it appears that the respondent merely prefers the career opportunities available in this country as an engineer.

The Board granted petitioner permission to depart the United States voluntarily within thirty days of its order.

In denying petitioner's motion to reopen his deportation proceedings, the Board noted that in its prior decision of November 18, 1982, the petitioner's claim of persecution had been considered and the Board concluded that he had not established a well-founded fear of persecution; and that petitioner's belated brief, which now is a part of the record, presented nothing that

would warrant a change in the Board's prior conclusion.

Petitioner filed another motion to reopen proceedings on February 27, 1984 based on his recent marriage to a United States citizen, seeking an adjustment in his status to that of a lawful permanent resident. The Board denied this motion on April 3, 1984, finding that petitioner is ineligible to adjust his status because he could not obtain a waiver of the two year foreign residence requirement under 8 U.S.C. § 1182(e). Section 1182(e) provides that an alien student under section 1101(a)(15)(J) shall not be eligible for permanent residence unless he lives in the country of his origin for two years after his departure from the United States. This requirement is subject to waiver by the Director of the United States Information Agency in cases where departure would cause exceptional hardship on the alien's spouse who is a citizen of the United States. The Board noted that jurisdiction to review petitioner's application for waiver under this section lies exclusively with the District Director and denied his motion to reopen proceedings.

## II

Petitioner argues that the Board and immigration judge applied an incorrect standard in concluding that he had not established a "clear probability" of persecution. He relies upon the decision of this Court in *Reyes v. INS*, 693 F.2d 597 (6th Cir.1982), in which we held that "clear probability" is too strict a standard. The decision of this Court in *Reyes* followed the opinion of the Second Circuit in *Stevic v. Sava*, 678 F.2d 401 (2d Cir.1982). This Court wrote as follows, including a quotation from the Second Circuit:

It is important to note that there were substantial changes in the Immigration Act since *Cheng Kai* had been decided. In fact, the Second Circuit has suggested that the "clear probability" test is inconsistent with the tenor and spirit, if not the language, of the new provisions. In *Stevic v. Sava*, 678 F.2d 401 (2d Cir. 1982), the Second Circuit wrote:

Both the text and history of that document [the new Act] strongly suggest that asylum may be granted, and under Section 243(h), deportation must be withheld, upon a showing *far short of a "clear probability"* that the individual will be singled out for persecution. *Id.* at 409 (emphasis added).

Since the Board applied the more stringent clear-probability test, the holding cannot stand.

693 F.2d at 599

In *INS v. Stevic*, —— U.S. ——, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984), the Supreme Court reversed the Second Circuit, and held that an alien, seeking withholding of deportation under 8 U.S.C. § 1253(h) on the basis that he will be subject to persecution in the country to which he would be deported, must establish "a clear probability of persecution" to avoid deportation. The Court held that the Refugee Act of 1980, Pub.L. 96–212, and its amendment to 8 U.S.C. § 1253, did not change the well-established clear probability rule in cases seeking withholding of deportation. The Supreme Court indicated that it also disagreed with the decision of this Court in *Reyes*. *See* —— U.S. —— n. 4, 104 S.Ct. at 2492 n. 4.

After the decision of the Supreme Court in *Stevic*, this Court granted the motion of the Service to reconsider its decision in *Reyes*, vacated that decision, and affirmed the decision of the Board of Immigration Appeals. *Reyes v. I.N.S.*, 747 F.2d 1045 (6th Cir.1984).

In *Youkhanna v. I.N.S.*, 749 F.2d 360 (6th Cir.1984), this Court applied the clear probability of persecution standard to an application for withholding of deportation. With respect to an application for asylum under 8 U.S.C. § 1158, this Court wrote:

The "clear probability" standard applies only to petitioners' section 243 applications for withholding of deportation. Petitioners' appeal of the denial of their request for asylum requires separate analysis. Under section 208 of the Act, 8 U.S.C. § 1158, an alien "may be granted asylum in the discretion of the Attorney General if the Attorney General deter-

mines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." Under section 1101, a refugee is defined as one who has "a well-founded fear of persecution."

In *Stevic, supra,* the Supreme Court expressly declined to decide on the meaning of the phrase, "well-founded fear of persecution," —— U.S. ——, 104 S.Ct. at 2501, but did "assume ... that the well-founded-fear standard is more generous than the clear-probability-of-persecution standard." *Id.,* —— U.S. at ——, 104 S.Ct. at 2498. However, the applicant must still "present *specific* facts through objective evidence if possible, or through his or her own persuasive, credible testimony, showing actual persecution or detailing some other good reason to fear persecution on one of the specified grounds." *Carvajal-Munoz v. INS,* 743 F.2d 562 (7th Cir.1984) (original emphasis).

749 F.2d at 362.

In *Youkhanna* this Court proceeded to hold that the petitioner had failed to present specific evidence satisfying the standard of "well-founded fear of persecution" and affirmed the decision of the Board in denying the application for asylum.

*See also Dally v. I.N.S.,* 744 F.2d 1191, 1196 (6th Cir.1984), applying the clear probability standard to a request for asylum made after the institution of deportation proceedings. In footnote 6 the Court wrote:

This appeal, as did *Stevic,* does not involve review of the petitioners' application for asylum. As we noted, requests for asylum made after the institution of deportation proceedings "*shall* also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act." 8 C.F.R. § 208.-3(b) (1983). Because all of the petitioners requested renewal of their asylum applications at their deportation hearings, those requests must also be judged under the "clear probability" standard applicable for requests pursuant to section 243(h).

Petitioner has produced many documents, but no specific evidence that he would be singled out for persecution. The translation of the purported letter from his sister upon which petitioner relies neither suggested nor substantiated any specific danger of potential persecution of petitioner. The translation of the sister's letter, dated October 1, 1980, is quoted in the footnote.[1]

In *Youkhanna v. I.N.S.* this Court wrote:

Petitioners have failed to establish a clear probability of persecution. Their briefs and appendices contain numerous general descriptions of the lamentable religious and political conflicts in Iraq. However, "something more than newspaper articles and pamphlets are necessary to show that the Board has abused its discretion in denying a petitioner's request for the withholding of deportation." *Dally v. INS,* 744 F.2d 1191 at

1. You should understand the following statement in a good way: The reason Adil stayed in the hospital (prison) was because he fell down at the University (place inside prison for interrogation). But, he is fine now and thanks God. His face is white because he did not see the sun while he was in the hospital. Adil is gaining weight.

My dear brother, Ahmed, don't think of us, all of us are well. Your cousin, Abo Jawad, is greeting you and so do his parents. Your brother, Adil, is greeting you with special greetings and he insists on me to repeat the first two main recommendations because you know that very good, my dear brother.

Please do not worry.

As far as your $100 Iraqi dinner that you asked me about, I went to Alrafidane Bank and they complicated the story. But, when our brother, Adil, went to the Bank again every thing was alright. You will receive the money soon, if God wills. Whatever you need, we will send to you.

My dear brother, please, I want you to buy me something for cake decorations and sunglasses of beige color, middle-size, and round. If it is too expensive, then do not buy it.

Your sister,
Karima Ali Moosa
Signed

Note: The terms "hospital" means "prison", and "university" means "interrogation center".

1197 (6th Cir.1984). Rather, "[s]ome type of specific evidence that an individual would actually be singled out for persecution must be produced." *Id.* at 1196. 749 F.2d at 361.

 We emphasize that the present case involves denial by the Board of a motion to re-open a former decision on an application for asylum and withholding of deportation. This action of the Board will not be set aside absent a clear showing of abuse of discretion. *Youkhanna, supra,* 749 F.2d 360, 361 (6th Cir.1984); *Williams v. Sahli,* 292 F.2d 249 (6th Cir.1961), *cert. denied,* 368 U.S. 977, 82 S.Ct. 482, 7 L.Ed.2d 439 (1962).

 We conclude that petitioner has failed to establish a clear probability of persecution in support of his claim for withholding of deportation or a well-founded fear of persecution in support of his application for asylum.

The decision of the Board of Immigration Appeals is affirmed.

Wellford, Circuit Judge, filed dissenting opinion.