767 F.2d 920
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MAJIB SALIWA HARMAZ, PLAINTIFF-APPELLEE,
v.
IMMIGRATION AND NATURALIZATION SERVICE, DEFENDANT-APPELLANT.
 NO. 84-1281
 United States Court of Appeals, Sixth Circuit.
 6/3/85
 
 E.D.Mich.
 REVERSED AND REMANDED
 On Appeal from the United States District Court for the Eastern District of Michigan
 Before: KEITH and KRUPANSKY, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal by the defendant, Immigration and Naturalization Service (INS), from an order entered on February 23, 1984 by the United States District Court for the Eastern District of Michigan, Judge Robert E. DeMascio presiding. This case arises under a petition for habeas corpus filed by plaintiff, Najib Saliwa Harmaz, a native of Iraq, in response to a decision by the Board of Immigration Appeals denying asylum and ordering the exclusion and deportation of the plaintiff. For the following reasons we reverse and remand the case to the district court.
 
 
 2
 Plaintiff, a 35 year old Chaldean and citizen of Iraq, entered the United States on October 24, 1980, along with seven other illegal aliens from Iraq. Mr. Harmaz, in possession of an airline ticket for transit to Mexico, deplaned during a transit stop at JFK International Airport in New York without any documents or authorization for entry, and claimed asylum in the United States under the Refugee Act of 1980. Harmaz claimed that he suffered discrimination as a Christian, as well as for his refusal to join the ruling Baath party in Iraq. He was then granted a deferred inspection in the custody of LOT airlines for three days to October 27, 1980. On that date plaintiff was granted further adjournment of inspection by the New York office of INS until November 17, 1980. On that date plaintiff requested and received an additional week in order to file an application for asylum. Appellee's application was received by the district director of the INS, who informally rejected the application by letter due to plaintiff's failure to establish a well-founded fear of persecution if returned to his home country of Iraq.
 
 
 3
 Nevertheless, the district director referred Mr. Harmaz' asylum application for formal consideration by INS. On November 26, 1980, plaintiff was personally interviewed by an officer of INS with the assistance of an interpreter with regard to his asylum petition. Plaintiff testified that he was a liquor store owner and prior to that had worked as a bartender. On February 20, 1981, the examminer denied the asylum request.
 
 
 4
 On March 3, 1981, plaintiff was accorded an exclusion hearing. The immigration judge heard 21 pages of testimony. Plaintiff and the INS submitted certain exhibits for consideration by the immigration judge. Plaintiff's counsel submitted a translation of an Arabic document which purported to cancel previous travel restrictions allegedly imposed by the Iraqi government. Through his asylum application, plaintiff testified that he had bribed a government official to obtain the freedom to travel, the absence of which was imposed by the government on numerous citizens during the ban years between 1977-1979. Plaintiff's counsel also submitted a Detroit Free Press front page article from March 1, 1981, regarding Iraqi government actions.
 
 
 5
 Finally Mr. Harmaz submitted two affidavits from former natives of Iraq who attest that he, like themselves, would be subject to political persecution if forced to return. At the hearing plaintiff also testified for the first time that he had a college diploma, was employed as a physical education teacher, and was forced to resign his teaching position due to his refusal to join the Baath party.
 
 
 6
 In opposition, counsel for INS submitted a policy letter issued by the Department of State in May, 1980, addressing conditions in Iraq. The Department of State concluded in May 1980 that its June 1978 communique regarding the unfavorable political climate in Iraq for Iraqi Christians had changed. The Department determined that the prior dangers of reprisal were no longer present, and accordingly, asylum applications would no longer be routinely approved. INS also submitted an article from the Michigan Catholic expressing the view that Chaldean-Rite Christians, though a minority in the Moslem country of Iraq, enjoyed good relations with the government.
 
 
 7
 Based upon all the evidence and oral testimony the immigration judge denied plaintiff's application for asylum, and found him excludable and deportable on May 20, 1981. Specifically, the immigration judge determined that Mr. Harmaz' allegations of persecution were generalized and specualtive and that there was not an adequate showing that the Iraqui government exercised a uniform system of discrimination. The judge noted that plaintiff and his family were able to leave the country without difficulty and that plaintiff had only one arrest for selling liquor. While the immigration judge found that there had been a showing of some discrimination against non-Baath party members, he found there was a significant degree of religious freedom. Specifically, he found that religious meetings with people of foreign countries were held openly and not surreptiously, or without permission of the government. Since plaintiff alleged that all Chaldean Christians are treated differently than are Baath party members and he did not establish that he was an individual target of discrimination, the immigration judge was compelled to find that appellee had simply not met the burden of proof imposed by 8 CFR 208.5, which reads in pertinent part:
 
 
 8
 The burden is on the asylum applicant to establish that he/she is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, the country of such person's nationality . . . because of persecution or a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.
 
 
 9
 Thereafter, on June 2, 1981, plaintiff appealed the adverse decision of the immigration judge to the Board. On April 29, 1982, the Board remanded the case to the immigration judge so that a recommendation letter from the Department of State, previously solicited by INS, could be obtained and reviewed prior to a final decision. The Department of State issued a recommendation that Mr. Harmaz be denied asylum for the reason that he had failed to meet his burden of showing that he had a well founded fear of being persecuted upon his return to Iraq. On remand, the immigration court considered the case, and, in light of the Department of State recommendation, invited appellee to submit new evidence and further testimony within 10 days, provided Mr. Harmaz first filed a formal motion to reopen.
 
 
 10
 Plaintiff did not wish to reopen the matter and submitted a letter through counsel to that effect. Accordingly, on February 16, 1983, the immigration judge issued his second opinion, reiterating his earlier findings and concluding that the Department of State's recommendation to deny asylum added nothing favorable to appellee's case. On February 16, 1983, appellee again appealed the immigration judge's adverse decision to the Board, stating that the judge had exhibited prejudice in adopting the recommendation of the State Department.
 
 
 11
 On May 18, 1983, the Board issued an opinion concurring in the immigration judge's decision. The Board found that under any burden of proof imposed, either clear probability, good reason or realistic likelihood, plaintiff had simply failed to establish that he had a well founded fear of persecution if returned to Iraq.
 
 
 12
 Plaintiff then instituted the present action by filing a writ of habeas corpus in the district court and concurrently seeking injunctive relief to prevent his imminent deportation. In response, INS filed a motion for summary judgment. On February 3, 1984, Judge DeMascio heard oral argument on the writ, as well as the agency's motion for summary judgment, and ruled from the bench that the INS had abused its discretion in denying the petition for asylum. The court specifically found that appellee had been forced to resign his position as a teacher in Iraq by the ruling political party and accordingly such action clearly proved that petitioner had been pinpointed by the government. Judge DeMascio concluded that INS had erroneously applied the proper standard, and if the standards had been correctly applied, asylum would not have been denied. On February 23, 1984, the district court entered an order reflecting the decision from the bench.
 
 
 13
 In reaching its decision, the district court relied on this Court's ruling in Reyes v. INS, 693 F.2d 597 (6th Cir. 1982). In Reyes this Circuit addressed the scope of judicial review in a case where a petitioner is seeking asylum. This Court held that the district court was bound to review the administrative record to determine if the Board had applied the correct legal standard, and to determine whether the Board's decision was supported by substantial evidence in the record as a whole. In doing so, this Circuit expressly adopted the reasoning employed by the Second Circuit in Stevic v. Sava, 678 F.2d 401 (2nd Cir. 1982) prior to its reversal by the Supreme Court in INS v. Stevic, 104 S.Ct. 2489 (1984). In Stevic the Second Circuit held that the 1980 Refugee Act had effectively changed the burden of proof in asylum cases from the 'clear probability' of persecution delineated in Cheng Kai Fu v. INS, 386 F.2d 750 (2nd Cir. 1967) cert. denied, 390 U.S. 1003 (1968) to a showing far short of a clear probability that the individual would be singled out for persecution. Stevic, 678 F.2d at 409. In accordance with Stevic and expressly relying upon it in Reyes, this Court reversed the decision of the Board for its improper application of the 'clear probability of persecution' standard and determined that under the lesser burden of proof, a well founded fear of persecution, plaintiff had established entitlement to asylum.
 
 
 14
 However, approximately one year later, the Supreme Court granted certiorari in Stevic v. Sava, and thereafter reversed the Second Circuit, holding that the Refugee Act of 1980 had not altered the burden of proof in asylum or withholding of deportation cases. INS v. Stevic, 104 S.Ct. 2489 (1984). Specifically, the Supreme Court rejected the reasoning of the Second Circuit and upheld the burden of proof enunciated earlier by the Second Circuit in Cheng Kai Fu that an alien must establish a clear probability of persecution to avoid deportation under 8 U.S.C. Sec. 1253(h)(1). As a consequence of the Supreme Court's decision in Stevic, this Circuit's decision in Reyes has been implicitly reversed. Thus, the decision of the district court in the instant matter, which is based on Reyes, has been effectively overruled.
 
 
 15
 Accordingly, the decision is reversed and remanded to the district court with instructions to apply the principles upheld by the Supreme Court in INS v. Stevic.