Hamid **BAHRAMNIA**, Petitioner,

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 85–4446
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1986.

Joshua Turin, Dallas, Tex., for petitioner.

Robert L. Bombough, Director, Linda B. Adams, Allen W. Hausman and Jane A. Williams, Attys., Office of Immigration Litigation, Washington, D.C., David Lambert, Dist. Director, I.N.S., New Orleans, La., Ronald Chandler, Dist. Director, I.N.S., Dallas, Tex., for respondent.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Because the Board of Immigration Appeals did not abuse its discretion in denying Hamid Bahramnia's motion to reopen his deportation proceeding on the ground that he had failed to make a *prima facie* showing of his eligibility for asylum or withholding of deportation, we deny his petition for review.

I.

Bahramnia, a thirty-five year old Iranian citizen, entered the United States six years ago on a tourist visa that expired September 1, 1979. In July 1979, he applied for a change of his tourist status to that of a nonimmigrant student, requesting permission to stay in the United States through August 22, 1983. The request was denied by the District Director pursuant to a presidential policy then in effect that directed the Attorney General not to exercise his discretionary authority favorably on behalf of Iranian nationals.

In 1980, Bahramnia was ordered deported to Iran and he appealed. Thereafter, without notifying the Immigration and Naturalization Service (INS) of his change of address, he moved to Arlington, Virginia, and married a United States citizen. Although his wife filed a petition to establish his status as an immediate-relative of a United States citizen, and Bahramnia applied for status as a permanent resident, the couple divorced before his petition was acted on.

In 1981, the Board of Immigration Appeals (Board) dismissed Bahramnia's appeal from the 1980 deportation order, granting him the privilege of voluntarily departing with thirty days. Bahramnia neither complied with nor appealed this decision. After he was arrested by INS agents almost five years later, on May 16, 1985, he moved to reopen the proceedings on the basis of a request for political asylum and sought a stay of deportation. When the stay was denied, he sought a writ of habeas corpus

from the District Court for the Northern District of Texas. That court stayed deportation pending the Board's consideration of the motion to reopen. Thereafter, the Board denied the motion to reopen because Bahramnia failed to make a *prima facie* showing of his eligibility either for political asylum, pursuant to section 208(a) of the Immigration and Nationality Act,[1] or for withholding of deportation pursuant to section 243(h) of the Act.[2] The Board found that Bahramnia (1) did not show that his application was supported by "evidence tending to establish that it is more likely than not he would be subject to persecution" on account of any one of the statutorily-articulated bases: race, religion, nationality, membership in a particular social group, or political opinion; and (2) "failed to submit evidence which would suggest that he has adequately substantiated his claim to a well-founded fear of persecution." Bahramnia seeks review of that denial.

## II.

The reopening of deportation proceedings is discretionary with the Board.[3] The Supreme Court held in *INS v. Jong Ha Wang*,[4] that denials of reopening by the Board are not to be casually reversed. The Court there noted: "the Government has a legitimate interest in creating official procedures for handling motions to reopen deportation proceedings so as readily to identify those cases raising new and meritorious considerations."[5] We review the Board's determination, therefore, only for an abuse of discretion.[6]

■ The Board may not grant a motion to reopen unless it is based upon new, material facts.[7] Allegations of such new facts must be supported by affidavits or other evidentiary material[8] sufficient to establish a *prima facie* case of eligibility for the relief sought.[9] Once deportation proceedings have been completed, a motion to reopen, in addition to meeting the requirements of 8 C.F.R. §§ 3.2 and 3.8(a) (1985), must also "reasonably explain the failure to request asylum prior to the completion of the exclusion or deportation proceeding," a criterion imposed by 8 C.F.R. § 208.11 (1985). This is an additional requirement to the establishment of a *prima facie* case of eligibility.[10]

Bahramnia agrees that he must both make out a *prima facie* case of eligibility for the relief he seeks and explain why he failed to seek this relief at his earlier deportation proceeding. He contends, however, that 8 C.F.R. § 208.11, which governs requests for asylum made after the conclusion of deportation proceedings, must be applied in preference to 8 C.F.R. § 3.2, which governs motions to reopen in general, to determine the evidentiary burden that he must meet to establish a *prima facie* case of eligibility.[11] He argues that section

---

**1.** 8 U.S.C. § 1158(a) (1982).

**2.** 8 U.S.C. § 1253(h) (1982).

**3.** *I.N.S. v. Phinpathya*, 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 588 n. 6, 78 L.Ed.2d 401, 408 n. 6 (1984).

**4.** 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981).

**5.** *Id.* at 145, 101 S.Ct. at 1031, 67 L.Ed.2d at 130.

**6.** *See Marcello v. I.N.S.*, 694 F.2d 1033 (5th Cir.) (holding that denial of motion to reopen was not an abuse of discretion), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983); *Ka Fung Chang v. I.N.S.*, 634 F.2d 248 (5th Cir.1981); *Vasquez-Contreras v. I.N.S.*, 582 F.2d 334 (5th Cir.1978); *Sangabi v. I.N.S.*, 763 F.2d 374, 375 (9th Cir.1985).

**7.** 8 C.F.R. § 3.2 (1985).

**8.** *Id.* at § 3.8(a).

**9.** *I.N.S. v. Jong Ha Wong*, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981).

**10.** *Duran v. I.N.S.*, 756 F.2d 1338, 1339–40 n. 1 (9th Cir.1985); *Samimi v. I.N.S.*, 714 F.2d 992, 994 (9th Cir.1983); *Sanchez v. I.N.S.*, 707 F.2d 1523, 1526 (D.C.Cir.1983); *Minwalla v. I.N.S.*, 706 F.2d 831, 834 (8th Cir.1983).

**11.** 8 C.F.R. § 208.11 (1985) provides: "[An asylum] request must reasonably explain the failure to request asylum prior to the completion of the exclusion or deportation proceeding. If the alien fails to do so, the asylum claim is considered frivolous, absent *any* evidence to the contrary." (Emphasis ours.)

208.11 mandates a lesser evidentiary standard in a motion to reopen involving an asylum claim than the standard usually required to establish a *prima facie* case in motions to reopen on other grounds.

██ Bahramnia argues that this interpretation is consonant with the 1980 amendments to the Immigration and Nationality Act. These amendments, which sought to effectuate "our national commitment to human rights and humanitarian concerns,"[12] included a change in section 208 of the INA, which deals with asylum claims. Thus, Bahramnia contends, his view of 8 C.F.R. § 208.11 is necessary to further the congressional intent behind the amendments to liberalize our asylum procedures. Not only have other circuits held that section 208.11 must be satisfied *in conjunction* with sections 3.2 and 3.8(a) when an asylum applicant files a motion to reopen,[13] but the Ninth Circuit has specifically rejected this exact argument.[14] We conclude, however, that we need not reach petitioner's argument, for the Supreme Court has recently held that, even if an alien has made out a *prima facie* case of eligibility for relief in his motion to reopen, the Attorney General has the discretion to deny that motion.[15]

Bahramnia lastly argues that the Board should not prejudge the merits of his application for relief without allowing him an opportunity to prove his case. We agree.[16] And the Board did not do so. Necessarily, the Board must examine the substance of the petitioner's case to a limited extent in order to determine whether the movant has established a *prima facie* case. We are convinced that the Board did no more than that in this case.

### III.

The Immigration and Nationality Act contains two provisions permitting aliens to resist deportation to countries where their life or freedom would be jeopardized: section 208(a), 8 U.S.C. § 1158(a) (1982), providing that an alien subject to exclusion from the United States may apply for asylum, and section 243(h), 8 U.S.C. § 1253(h) (1982), preventing the deportation of an alien to a country if the Attorney General determines that the alien's life or freedom would be threatened in that country because of his political opinion. The statutory standards for granting asylum and for withholding deportation are phrased in different terms. The withholding provision[17] requires an alien to prove that his "life or freedom would be threatened" on account of one of five statutory grounds.[18] The asylum section, on the other hand, requires that an alien prove "a well-founded fear of persecution" on the basis of the same five

---

8 C.F.R. § 3.2 (1985) provides: "Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing...."

12. S.Rep. No. 256, 96th Cong., 2d Sess. 1, 1, *reprinted in* 1980 U.S.Code Cong. & Ad.News 141, 141.

13. *See supra,* note 10.

14. *Chavez v. I.N.S.,* 723 F.2d 1431, 1432–33 (9th Cir.1984).

15. *I.N.S. v. Rios-Pineda,* —— U.S. ——, —— ——, 105 S.Ct. 2098, 2101–02, 85 L.Ed.2d 452, 457–60 (1985) (although the petitioner there sought to reopen to apply for suspension of deportation under 8 U.S.C. § 1254(a)(1) (1982), not for asylum or withholding of deportation, we find the difference immaterial).

16. *See, e.g., Motamedi v. I.N.S.,* 713 F.2d 575, 576 (10th Cir.1983) (court reverses a Board denial to reopen a deportation proceeding because the Board wrongly looked to the merits of the applicant's case rather than to see if the applicant had made out a *prima facie* case of eligibility).

17. The Ninth Circuit refers to the type of relief mandated by section 243(h) as "prohibition against deportation," not as "withholding of deportation," because the 1980 amendment to the Immigration and Nationality Act eliminated the Attorney General's discretion to award this relief and made such relief mandatory if the requisites are met. *See Balanos-Hernandez v. I.N.S.,* 749 F.2d 1316 (9th Cir.1984).

18. The statutory grounds are race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1253(h)(1) (1982).

statutory grounds. The different phraseology has led to a controversy over the standard of proof by which an alien must prove his entitlement to such relief, and has resulted in attempts by the courts of appeals to define further the phrases "well-founded fear" and "would be threatened."

The Supreme Court settled one aspect of the dispute by ruling, in *INS v. Stevic*,[19] that an alien applying for withholding of deportation under section 243(h) bears the burden of proving[20] a "clear probability of persecution."[21] The Court further held that "clear probability" is equivalent to a showing that "it is more likely than not that the alien would be subject to persecution on one of the specified grounds."[22] Upon that showing, withholding of deportation *must* be granted.[23]

Asylum is a related but distinct remedy. Section 208 of the Immigration and Nationality Act gives the Attorney General discretion to grant asylum to an alien if the alien establishes that he is a "refugee." The Act defines a "refugee" as "any person who is outside any country of such person's nationality ... and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[24] Although the alien bears the burden of proving his entitlement to asylum,[25] the standard of proof that he

must satisfy has not yet been resolved. In *Stevic*, the Court expressly declined to decide whether or how the standards under sections 208(a) and 243(h) differ.[26] Because the issue of entitlement to asylum was not before the Court in *Stevic*, it declined to decide the meaning of the phrase "well-founded fear of persecution."

Since *Stevic* was decided, the Third Circuit[27] and the Board of Immigration Appeals[28] have concluded that the standard for proving entitlement to asylum and withholding of deportation are identical, or, in practice, converge. Similarly, the Sixth Circuit has noted that, while the standards may differ as written, the regulations provide:

> requests for asylum made after the institution of deportation proceedings "*shall* also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act." 8 C.F.R. § 208.3(b) (1983). Because all of the petitioners requested ... asylum ..., those requests must also be judged under the "clear probability" standard applicable to requests pursuant to section 243(h).[29]

The Seventh Circuit has stated in dictum that the well-founded-fear burden is "very similar" to the clear-probability standard, although "not identical."[30] In contrast, some Ninth Circuit decisions have concluded that section 208(a) requires a lesser

---

**19.** 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984).

**20.** *See also* 8 C.F.R. § 242.17(c) (1985) ("The [applicant] has the burden of satisfying the special inquiry officer that he would be subject to persecution on account of race, religion, or political opinion as claimed.").

**21.** *Stevic*, 467 U.S. at ——, 104 S.Ct. at 2492, 81 L.Ed.2d at 327.

**22.** *Id.*, 467 U.S. at ——, 104 S.Ct. at 2501, 81 L.Ed.2d at 337.

**23.** *Id.*, 467 U.S. at ——, 104 S.Ct. at 2496 n. 15, 81 L.Ed.2d at 332 n. 15.

**24.** 8 U.S.C. § 1101(a)(42)(A) (1982) (codification of INA § 101(a)(42)(A)).

**25.** 8 C.F.R. § 208.5 (1985) ("The burden is on the asylum applicant to establish..."); *Stevic*,

467 U.S. at ——, 104 S.Ct. at 2497 n. 16, 81 L.Ed.2d at 332 n. 16.

**26.** 467 U.S. at ——, 104 S.Ct. at 2498, 2501, 81 L.Ed.2d at 334, 337.

**27.** *Sankar v. I.N.S.*, 757 F.2d 532, 533 (3d Cir. 1985); *Sotto v. I.N.S.*, 748 F.2d 832, 836 (3d Cir.1984).

**28.** *Matter of Acosta-Solorzano*, Interim Decision No. 2986 (BIA March 1, 1985), slip op. at 19–20.

**29.** *Moosa v. I.N.S.*, 760 F.2d 715, 719 (6th Cir. 1985), *quoting Dally v. I.N.S.*, 744 F.2d 1191, 1196 n. 6 (6th Cir.1984).

**30.** *Carvajal-Munoz v. I.N.S.*, 743 F.2d 562, 574–75 (7th Cir.1984).

quantum of proof by an asylum applicant than that required by section 243(h)(1) of an applicant for withholding of deportation.[31]

■ We need not here decide whether the "clear probability" standard is more exacting, for Bahramnia fails to show evidence of a well-founded fear even under a less onerous burden of proof. Other circuits have described the amount and type of evidence required to satisfy the burden of proof under either standard. The clear-probability test requires an alien to show at least that "it is more likely than not that *he as an individual* will be subject to persecution if forced to return to his native land"[32] or that he will be "singled out for persecution."[33] The Seventh Circuit, in analyzing what it concludes is an asylum applicant's lesser burden, stated that he must present "specific facts" through objective evidence to prove either past persecution or "good reason" to fear future persecution.[34]

Bahramnia asserts that his marriage in 1981, his uncertainty in 1980 what the course of events would be in Iran, his fear of reprisal should he apply for asylum, and the advice he received from counsel all contributed to his failure to apply for political asylum in 1980. He offers as new evidence a statement that two of his cousins were killed by the Khomeini Regime and two others were jailed, and that he only recently became aware of these facts. He also emphasizes his membership since 1983 in the Iran Society, asserted to be a "political organization of emigree Iranians who support most of the political policies of the ex-Shah of Iran and are committed to the ouster of the Khomeini Government."

Bahramnia's participation in the Iran Society has commenced since his 1981 deportation order. He presented no evidence, however, that members of this group had been "singled-out for persecution," nor has he demonstrated any nexus between his membership in this organization and other acts or persecution that would give rise to the reasonable foreseeability that he will be persecuted. It does not follow from the evidence presented that Bahramnia's mere membership in an opposition group and his participation in demonstrations or discussions against the present regime in Iran is, without more, of such significance to Iranian authorities so as to result in a "well-founded fear of persecution" upon his return to Iran. The evidence does not suggest that Bahramnia has been identified to Iranian authorities as an opponent of that regime, or that his activities in this country since 1983 have been so visible or notable so as to come to the attention of those officials. No evidence was submitted to suggest that supporters of the Iranian regime have taken action against him in the United States, or that any of his family members in Iran have been harmed in any way on account of their association with him.

■ Bahramnia argues at some length that the district court, when issuing a stay of deportation in the habeas proceeding, conclusively determined that he had made out a *prima facie* case of entitlement to asylum. Thus, he continues, the Board is collaterally estopped from denying his motion to reopen on that ground. In the habeas proceeding, the district court was asked to consider whether the Board abused its discretion in denying Bahramnia's motion for a stay of deportation pending the Board's consideration of his motion to reopen. In granting the stay, the court concluded:

> [T]he events giving rise to Petitioner's fear of persecution by his home government did not occur until sometime after the deportation proceedings were completed.... The evidence also shows a basis for petitioner's fear that the assertion of an asylum claim, if denied, would

**31.** *See Cardoza-Fonseca v. I.N.S.,* 767 F.2d 1448 (9th Cir.1985); *Bolanos-Hernandez v. I.N.S.,* 749 F.2d 1316, 1321 (9th Cir.1984).

**32.** *Dally v. I.N.S.,* 744 F.2d 1191, 1195 (6th Cir. 1984) (emphasis in original).

**33.** *Id.* at 1196.

**34.** *Carvajal-Munoz v. I.N.S.,* 743 F.2d 562, 574 (7th Cir.1984).

ensure persecution upon his arrival in Iran. Such evidence includes acts of persecution against other family members in Iran.

We agree with Bahramnia that the district court did consider the likelihood that he would succeed on his motion to reopen when it rendered judgment. That was not, however, the question directly before it. The court simply considered whether his motion to reopen had sufficient merit to warrant a stay of deportation pending consideration of the motion. It concluded that it did. The court did not, however, hold, even inferentially, that Bahramnia had established a *prima facie* case of entitlement to relief. It left that task to the Board.

### IV.

There is ample evidence in the record to support the Board's conclusion that Bahramnia has failed to establish a *prima facie* case of entitlement to asylum or withholding of deportation. Even if he has proved his *prima facie* case, the Board did not abuse its discretion in refusing to reopen his deportation proceeding.

For these reasons, the Board's decision is AFFIRMED and the petition for review is DISMISSED.