765 F.2d 144
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MASOUD NAMO BUTTI, ET AL., PETITIONERS,
v.
IMMIGRATION & NATURALIZATION SERVICE, RESPONDENT.
 NO. 84-3411
 United States Court of Appeals, Sixth Circuit.
 5/31/85
 
 ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS
 Before: MERRITT, CONTIE and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioners Buttis seek review of the Board of Immigration Appeals' dismissal of their appeal from the immigration judge's denial of their requests for asylum, 8 U.S.C. Sec. 1158, and for withholding of deportation, 8 U.S.C. Sec. 1253(h). For the reasons that follow, the petition is denied.
 
 I.
 
 2
 Masoud Namo Butti and Anwaar J. Butti and their children entered the United States on June 9 and June 6, 1980, respectively. On February 22, 1980, the petitioners' request for asylum was granted. On March 23, 1981, the Buttis were informed that their asylum status would be rescinded since it had been granted on the ground that Iraqi Christians as a class were subject to persecution and the U.S. Department of State had subsequently changed its view on that matter. On December 16, 1981, the Buttis' asylum status was rescinded and on March 10, 1982, they were ordered to show cause why they should not be deported.
 
 
 3
 The basis for the Buttis' asylum request was the fear that if returned to Iraq they would be persecuted due to their religion, Christian Catholic Chaldean. The Buttis' claims are presented in the following excerpt from their application for asylum.
 
 
 4
 I am a Christian and because of this I and my family have been severely persecuted by the Iraqi government and people. From 1964 until March of 1978 I worked at the Herfy Factory in Iraq as a supervisor. I was fired from my job because of my Christian religion. My children were constantly attacked in school and severely beaten merely because they were Christians. In 1977 I was arrested for no reason, held in jail for two days and I was beaten.
 
 
 5
 In 1978 I and my family while driving in our car were intentionally run off the road by a vehicle belonging to the Iraqi government. My wife suffered a broken leg, my child's teeth were knocked out and my breast bone was broken. My wife's brother applied for political asylum in the United States and somehow the Iradi government found out. After leaving Iraq we found that the government soldiers came to arrest my wife.
 
 
 6
 The Buttis alleged that they believed that on their return to Iraq they would be killed immediately.
 
 
 7
 At the hearing before the immigration judge on July 15, 1982, the Buttis conceded overstay and deportability, and sought asylum and withholding of deportation. Masoud Butti testified that he did not know of others in similar circumstances who went back to Iraq and were jailed, that no one in his family had entered the United States as a refugee, and that he had been allowed to travel to and from Iraq on business before he left. Before the immigration judge Butti testified:
 
 
 8
 Q. So in 1978, in June when you left Iraq the present regime was not in power?
 
 
 9
 A. Yes, Sadaam Hussain took over in 1979.
 
 
 10
 Q. Now you have never lived under his government then, have you?
 
 
 11
 A. No.
 
 
 12
 Q. Well what do you know personally from your own experience about this new government?
 
 
 13
 A. It says in my evidence what's the present government is.
 
 
 14
 Q. Well where do you get this information about the present government?
 
 
 15
 A. It's, it's being written in American, ah, news, ah, news, ah, ah, as Free Press.
 
 
 16
 On August 26, 1982, the immigration judge denied petitioners' requests for asylum and withholding of deportation, relying on the fact that the alleged acts of persecution against the Buttis took place prior to the change of government in Iraq and the speculative nature of petitioners' fears regarding returning to Iraq. 'No corroborative evidence that could be considered objective and specific in its relationship to the conclusory statements made by the male and female respondent was submitted for the record.' The court found no well-founded fear of persecution. 'This is true whether the clear probability test . . . or the test used by the various federal courts is relied upon.' The judge granted petitioners voluntary departure within 60 days from his order. On April 10, 1984, the BIA dismissed petitioners' appeal on the ground that they had failed to establish a well-founded fear. The Board found only a subjective fear and that '[b]oth allegations about the July 1977 arrest and the 1978 car accident lack corroborating details and plausibility.'
 
 II.
 8 U.S.C. Sec. 1253(h)(1) provides:
 
 17
 The Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(19) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
 
 
 18
 (Emphasis added). 8 C.F.R. Sec. 242.17(c) provides in pertinent part that '[t]he respondent has the burden of satisfying the special inquiry officer that he would be subject to persecution. . . .' Since withholding of deportation is mandatory if petitioner satisfied his burden, the INS decision is reviewed to determine whether it is supported by substantial evidence. Bolanos-Hernandez v. INS, 749 F.2d 1316, 1320 n.8 (9th Cir. 1984); Zepeda-Melendez v. INS, 741 F.2d 285, 289 (9th Cir. 1984); Carvajal-Munoz v. INS, 743 F.2d 562, 569 (7th Cir. 1984); Chavarria v. U.S. Department of Justice, 722 F.2d 666, 670 (11th Cir. 1984); Shoaee v. INS, 704 F.2d 1079, 1084 (9th Cir. 1983); McMullen v. INS, 658 F.2d 1312, 1316 (9th Cir. 1981). See INS v. Stevic, 104 S. Ct. 2489, 2496 n.15 (1984).
 
 
 19
 In INS v. Stevic, 104 S. Ct. 2489, 2492 (1984), the Court held that a party must show a clear probability of persecution to be entitled to withholding of deportation. 'The question under that standard is whether it is more likely than not that the alien would be subject to persecution.' Id. at 2498. We interpreted the clear-probability standard in Dally.
 
 
 20
 [T]he 'clear probability' test requires at least that an alien show that it is more likely than not that he as an individual will be subject to persecution if forced to return to his native land. A 'clear probability' of persecution cannot be proven by the introduction of documentary evidence, not pertaining to the applicant individually, that depicts a general lack of freedom or the probability of human rights abuses in the alien's native land. . . . Instead, the alien must introduce sufficient credible evidence that supports his individual claim of persecution. Of course, self-serving statements are not enough. . . . An alien must show that he will be singled out for persecution or some other 'special circumstances' before relief can be granted . . . In sum, we believe the most reasonable standard is to require that an alien . . . advance some credible evidence that authenticates his subjective allegations of persecution.
 
 
 21
 744 F.2d 1191, 1195-96 (6th Cir. 1984); Youkhanna v. INS, 749 F.2d 360, 361 (6th Cir. 1984); Bonanos-Hernandez, 749 F.2d at 1323-24; Carvajai-Munoz, 743 F.2d at 573; Minwalla v. INS, 706 F.2d 831, 835 (8th Cir. 1983); Sanchez v. INS, 707 F.2d 1523, 1527 (D.C. Cir. 1983); Rejaie v. INS, 691 F.2d 139, 145 (3d Cir. 1982); Kashani v. INS, 547 F.2d 376, 379 (7th Cir. 1977). See generally Moosa v. INS, Case No. 84-3273 (6th Cir., May 2, 1985).
 
 
 22
 In this case, the immigration judge cited the clear probability standard, found petitioner's fears speculative, and found no corroborative evidence that was objective, specific and related to the petitioners' fears. Petitioners proffer no evidence, other than their bald assertions, that their detention and the car accident were related to their religion. See Shamon v. INS, 735 F.2d 1015, 1016-17 (6th Cir. 1984). The fact that petitioners' persecution occurred under the former regime, that the government of Iraq has changed since petitioners' departure, and that the U.S. Department of State has concluded that persecution under the new government is unlikely provide substantial evidence supporting the immigration judge's denial of petitioners' request for withholding of deportation.
 
 III.
 8 U.S.C. Sec. 1158(a) provides:
 
 23
 The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.
 
 
 24
 (emphasis added). 8 U.S.C. Sec. 1101(a)(42)(A) defines 'refugee' as
 
 
 25
 any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion,
 
 
 26
 8 C.F.R. Sec. 208.5 provides that the burden of establishing refugee status is on the asylum applicant.
 
 
 27
 Gaining relief under Sec. 1158(a) is a two-part process. First, the applicant must establish refugee status. This is a factual determination which we review in accordance with the substantial evidence standard. Bolanos-Hernandez, 749 F.2d at 1321 n.9; Carvajal-Munoz, 743 F.2d at 567. Second, since 'the decision to grant a particular application rests in the discretion of the Attorney General,' Stevic, 104 S. Ct. at 2497 n.18, denial of the application of an applicant who establishes refugee status is evaluated for abuse of discretion. Youkhanna, 749 F.2d at 362 n.2; Bolanos-Hernandez, 749 F.2d at 1320; Carvajal-Munoz, 743 F.2d at 567.
 
 
 28
 The Supreme Court has characterized the well-founded fear standard of Sec. 1158 as 'more generous' than the clear-probability standard of Sec. 1253(h). Stevic, 104 U.S. at 2498; Youkhanna, 749 F.2d at 362. '[S]o long as an objective situation is established by the evidence, it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility.' Stevic, 104 S. Ct. at 2498. However, Sec. 1253(h) relief is mandatory while Sec. 1158 relief is discretionary.[1]
 
 
 29
 The requirements of objective, specific and corroborative evidence applied in Sec. 1253(h) cases appear to apply to Sec. 1158 cases. Carvajal-Munoz, 743 F.2d at 574, 577; Nasser v. INS, 744 F.2d 542, 544 (6th Cir. 1984) (self-serving declarations of persecution are insufficient).
 
 
 30
 In this case, the immigration judge found that petitioners had failed to establish a well-founded fear of persecution. The applicant's testimony alone will be rarely sufficient to justify relief The BIA found that petitioners' testimony lacked plausibility. Mitigating against petitioners is the change in government in Iraq which apparently has alleviated persecution in the country. While, as the concurrence notes, this is a close question, in light of our deferential standard of review, we conclude that the immigration judge's decision is supported by substantial evidence. Even if we were to determine that a well-founded fear existed, denial of asylum is still discretionary and petitioners have demonstrated no abuse of discretion in this case.
 
 
 31
 We likewise find no merit in petitioners' due process contentions. See Youkhanna, 749 F.2d at 362; Nasser, 744 F.2d at 544.
 
 
 32
 Accordingly, the petition for review is DENIED.
 
 WELLFORD, Circuit Judge, concurring:
 
 33
 I reluctantly concur with the result reached. Were I writing on a clean slate, I would agree with Judge Edwards' dissent in Nasser v. I.N.S., 744 F.2d 545 (1984). There are some distinguishing factors in this case that set it apart from the group of recent decisions of this court cited as controlling. Unfortunately, however, the differences are not substantial enough to compel a different result. The Buttis, unlike the petitioners in Shamon, Dallv, Nasser or Youkhanna, were initially granted asylum. The evidence by the Buttis is also significantly more compelling than that of the petitioners in Shamon. Although the Buttis are people of substantial means and education, they and most of their relatives have seen fit to leave their native country because of their perception of harassment, their evidently sincere fears, and the reported actions of a Moslem Baath regime which, in the light of other recent Middle Eastern developments, appears to have deep religious antagonism to an ethnic and Christian minority. It is regrettable that these people of conviction and many family ties in the Detroit area are now to be deported. It is hoped that a voluntary departure option may be of some comfort to lessen the impact of this ruling.
 
 
 
 [1]
 '[I]f the court concludes that the alien met the clear-probability standard, it need go no farther since the well-founded fear standard will, a fortiori, also have been met.' Bolanos-Hernandez, 749 F.2d at 1322. However, if the court finds that the clear-probability standard was not met, then it must go on to consider the well-founded fear standard since it is a less rigorous standard