**Eliseo Jacinto CHAVARRIA, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Board of Immigration Appeals, Respondent.**

**No. 82–6164.**

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 1984.

James A. Hunolt, Francesco Isgro, Lauri Steven Filipu, Beneva Weintraub, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before RONEY, HATCHETT and ANDERSON, Circuit Judges.

HATCHETT, Circuit Judge:

Petitioner, Elisio Jacinto Chavarria, seeks review of his final order of deportation. We affirm the Board of Immigration Appeals's dismissal of Chavarria's appeal from a denial of his application for asylum under Section 208 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1158.

Chavarria is a native and citizen of Nicaragua. He arrived in the United States on or about May 2, 1980, as a non-immigrant visitor for pleasure. He was authorized to stay until May 10, 1980, but remained beyond that time without authorization. At the deportation hearing, Chavarria admitted the allegations contained in the Order to Show Cause, and was thus deportable under Section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a)(2).[1] Chavarria filed an application with the immigration judge for asylum under Section 208 of the Act, 8 U.S.C.A. § 1158. The application was referred to the Department of State as required by 8 C.F.R. § 208.10(b).[2]

Robert L. Boyer, Miami, Fla., for petitioner.

[1]. Title 8 U.S.C.A. § 1251 provides, in pertinent part:

Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States.

[2]. The body of the State Department's letter, dated April 17, 1981, provided:

This is in reply to your recent letter concerning the applicant's request for asylum in the United States.

Upon careful review of the information submitted, it is our view that the applicant has failed to establish a well-founded fear of being persecuted upon return to Nicaragua within the meaning of the United National Protocol Relating to the Status of Refugees. In our view, the country-wide civil war and the accompanying random violence which were mainly responsible for the initial blanket grant of deferred departure for Nicaraguan nationals no longer pose the problem they once did regarding the safe return of

Pursuant to 8 C.F.R. § 208.3(b), the immigration judge also considered the asylum request as a request for withholding deportation under Section 243(h) of the Act, 8 U.S.C.A. § 1253(h).[3] Chavarria's application and the letter from the Department of State were admitted into evidence at the deportation hearing without objection.

Evidence at the hearing established that Chavarria had worked as an accountant for Plasma Pheresis, a private firm in Nicaragua which dealt with blood plasma, for about eighteen months from 1976 to 1978. During the period of Chavarria's employment, the editor of a Nicaraguan newspaper engaged in a "political campaign" against Plasma Pheresis. In response, the company filed a libel suit against the newspaper and its editor, Chamaro. Chamaro was assassinated on January 10, 1978, while the suit was pending. The following day, a mob burned down the office of Plasma Pheresis.

Chavarria remained in Nicaragua for two years following this incident, during which time he lived with his family and studied accounting. According to Chavarria, Sandinistas came to his house to interrogate him because he had worked for Plasma Pheresis and was anti-Communist. Chavarria testified that he was threatened because of his former employment and would be sentenced to thirty years' imprisonment if returned to Nicaragua. Chavarria's parents, brothers, and sisters remain and work in Nicaragua. He did not know of any harm to his relatives.

Fausto Alvarez, the former comptroller of Plasma Pheresis, testified that there was a violent reaction against employees of the company after the assassination of the newspaper editor. According to Alvarez, employees in management positions were harassed by the Sandinistas; the company's public relations man was shot and killed, and other managers were shot or arrested. Alvarez testified that Chavarria had held a management position with Plasma Pheresis and would be harassed or imprisoned if he returned to Nicaragua.

Another witness, the Director for the Center of Nicaraguan Refugees, testified that an official of the Nicaraguan government once stated that Nicaraguans applying for asylum in the United States would be imprisoned. He stated that his organization had processed approximately 4,500 applicants for asylum. He was aware that Nicaraguans have returned to that country, but did not know what happened to those Nicaraguans who returned after the civil war.

The immigration judge concluded that, although Chavarria justifiably felt apprehensive about returning to Nicaragua, he had failed to establish a reasonable fear of persecution if returned to Nicaragua. Consequently, Chavarria's application was denied. The judge, however, did grant Chavarria the privilege of voluntary departure. The Board of Immigration Appeals affirmed the decision of the immigration judge and dismissed the appeal.

We must decide whether the Board of Immigration Appeals properly dismissed Chavarria's appeal. Chavarria argues that the immigration judge improperly placed heavy reliance upon an outdated, boilerplate State Department advisory opinion.

---

Nicaraguans. Most of the Nicaraguans who fled into neighboring countries as a result of the hostilities have now returned. We have also noted recent improvements in the political climate and respect for human rights in Nicaragua.

Should the applicant submit any additional information regarding his/her request which you believe requires further consideration, we will be glad to review such additional information, or should there be specific areas of concern on which you would like us to comment, please let us know.

I hope this information will be helpful in making a decision on the applicant's request for asylum.

3. Title 8 C.F.R. § 208.3 states, in pertinent part:
   § 208.3 Filing the application.
   (b) With the immigration judge. Asylum requests made after the institution of exclusion or deportation proceedings shall be filed in quadruplicate with the docket clerk of the immigration court. Such asylum requests shall also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act.

Further, he argues that the Board of Immigration Appeals abused its discretion by not addressing his contention, raised in his Notice of Appeal, that the State Department's opinion was faulty. In response, the Immigration and Naturalization Service (INS) asserts that the advisory opinion was admitted at the immigration hearing without objection pursuant to 8 C.F.R. § 208.10. Chavarria has produced no evidence of a change in the foreign policy views of the State Department toward Nicaragua. Moreover, the decisions of the immigration judge and the Board of Immigration Appeals were based primarily on a finding that Chavarria's evidence was insufficient to establish a reasonable fear of persecution, rather than upon the advisory opinion of the State Department.

In pertinent part, 8 C.F.R. § 208.10(b) provides:

> When the asylum request is filed, the hearing shall be adjourned for the purpose of requesting an advisory opinion from BHRHA [the Bureau of Human Rights and Humanitarian Affairs of the Department of State].... The BHRHA opinion, unless classified under Executive Order No. 12065, shall be made part of the record, and the applicant given an opportunity to inspect, explain, and rebut it.

Thus, unless classified under an executive order, section 208.10(b) requires that an ad-

visory opinion be made part of the record. In this case, Chavarria's counsel was furnished a copy of the opinion and stated that he had no objection to its admission into the record. On appeal to the Board of Immigration Appeals and in the present petition before this court, Chavarria asserts that the advisory opinion was outdated concerning the Reagan administration's views on Nicaragua at the time it was issued.

■ Pursuant to 8 C.F.R. §§ 3.2[4] and 3.8, Chavarria may file a motion to reopen before the Board in order to present new evidence, along with an explanation regarding why the new evidence could not have been presented earlier. It is well established that the regulations place the burden of proof upon the asylum applicant. 8 C.F.R. § 242.17(c); *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1042 (5th Cir. Unit B, 1982). Consequently, Chavarria's bald assertions that conditions have changed in Nicaragua provide no basis for relief.

■ Second, Chavarria argues that he established a well-founded fear of persecution by a preponderance of the evidence. Therefore, the decision of the immigration judge denying his application for asylum was an unlawful abuse of administrative discretion. In response, the INS asserts that Chavarria failed to establish that he would likely be singled out for persecution.

At the deportation hearing, Chavarria admitted the allegations contained in the Or-

---

**4.** Title 8 C.F.R. § 3.2 states:

§ 3.2 Reopening or reconsideration.

The Board may on its own motion reopen or reconsider any case in which it has rendered a decision. Reopening or reconsideration of any case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written motion to the Board. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and

an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing. A motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion. For the purpose of this section, any final decision made by the Commissioner prior to the effective date of the Act with respect to any case within the classes of cases enumerated in § 3.1(b)(1), (2), (3), (4), or (5) shall be regarded as a decision of the Board.

der to Show Cause, and therefore, conceded deportability. Thus, the only question addressed was whether Chavarria was entitled to asylum or withholding of deportation pursuant to 8 U.S.C.A. § 1158 or § 1253(h)(1).

The statute was significantly amended in 1980. We must therefore determine what the appropriate standard of review is. Prior to the 1980 amendment, withholding of deportation was at the discretion of the Attorney General.[5] *McMullen v. Immigration and Naturalization Service,* 658 F.2d 1312, 1316 (9th Cir.1981). We adopt the Ninth Circuit's position that "the new, mandatory language of section 243(h) justifies replacing the abuse-of-discretion standard with the substantial-evidence standard.[6] *McMullen* at 1316. Under the 1980 amendment, the absolute discretion formerly vested with the Board has been removed. In order to give the 1980 amendment its full effect, the Board's factual findings should be subject to review. We adopt the Ninth Circuit's conclusion that, because "agency findings arising from public, record-producing proceedings are normally subject to the substantial-evidence standard of review," we shall review the Board's factual findings under the substantial-evidence test.

Having adopted the "substantial evidence" standard of review, we must now determine whether the Board of Immigration Appeals properly dismissed Chavarria's appeal. Review of the record indicates that the dismissal was proper.

■■■ Under the regulation applicable to temporary withholdings of deportation, it is clear that Chavarria had the burden of establishing that he would be subject to persecution on account of race, religion, or political opinion as claimed. 8 C.F.R. § 242.17(c); *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1042 (5th Cir. Unit B, 1982). It is generally established that an applicant for withholding of deportation must establish that *he specifically* will be subject to persecution in the event of deportation. *Fleurinor v. INS,* 585 F.2d 129 (5th Cir.1978). In this case, Chavarria's claim of persecution is based heavily on the fact that he held a management position at Plasma Pheresis, and that former management employees of that company were persecuted by the Nicaraguan government. Nevertheless, he remained in Nicaragua for two years after the events which allegedly triggered the persecution of company employees. Chavarria testified that he was questioned by the Sandinistas during that period, due to his knowledge of the firm, but in fact presented no evidence that he was persecuted during that two-year period. Further,

**5.** The former section read:

> The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which *in his opinion* the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason. [Emphasis added.]

Immigration and Nationality Act, Pub.L. No. 82–414, § 243(h), 8 U.S.C.A. § 1253(h), 66 Stat. 212 (1952).

**6.** Chavarria submitted his application for asylum in the United States on or about July 22, 1980. The 1980 amendment to the Act became effective March 17, 1980, and is thus applicable to Chavarria's application for asylum.

> The Refugee Act of 1980, read in relevant part:

> (h)(1) The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

> (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—

> (A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

> (B) the alien, having been convicted by a final judgment of particularly serious crime, constitutes a danger to the community of the United States;

> (C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or

> (D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

Refugee Act of 1980, Section 243(h), 8 U.S.C.A. § 1253(h).

he presented no evidence to indicate that he will be treated any differently upon his return to Nicaragua than he was during those two years. Although the director of the Center for Nicaraguan Refugees stated that the Nicaraguans who applied for asylum would be imprisoned upon return, he further testified that he was unaware of any asylum applicants returning to Nicaragua. In the absence of evidence that Chavarria specifically would be harmed, there was substantial evidence to support the Board of Immigration Appeals's conclusion that Chavarria was not entitled to withholding of deportation pursuant to 8 U.S.C.A. § 1253(h)(1). For these reasons, Chavarria's petition is DENIED.