Shamel YOUSIF, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 84–3823.

United States Court of Appeals, Sixth Circuit.

Submitted April 28, 1986.

Decided June 27, 1986.

Rudy Aguirre, Alhambra, Cal., for petitioner.

I.N.S., Cincinnati, Ohio, Thomas W. Hussey, Robert Kendall, Jr., Office of Immigration Litigation, Criminal Div., Washington, D.C., Christopher Barnes, U.S. Atty., Cincinnati, Ohio, Nicholas J. Pantel, for respondent.

Before CONTIE and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

CONTIE, Circuit Judge.

Petitioner Shamel Yousif seeks review of the Board of Immigration Appeals' denial of his motion to reopen deportation proceedings. For the reasons which follow, we deny the petition, finding that the Board did not abuse its discretion.

## I.

Shamel Yousif is a single, twenty-eight year old native and citizen of Iraq. He is also a Christian of Chaldean ethnic origin and is opposed to the Baath Party which presently rules Iraq. On October 3, 1980, he entered the United States as a non-immigrant visitor with authorization to remain until January 3, 1981. Petitioner remained in the United States beyond his authorized time limit. On February 23, 1981 he applied for political asylum with the District Director pursuant to section 208(a) of the Immigration and Naturalization Act (Act), 8 U.S.C. § 1158(a). In his application, Yousif alleged that he would be persecuted, arrested and incarcerated if he returned to Iraq because of his Chaldean Christian background, his absence from Iraq, his criticism of the Baath regime and his application for asylum. He also stated that were he to return to Iraq, he would be drafted into the army.

Yousif was interviewed by an Immigration and Naturalization Service (INS) examiner in April 1981. The examiner learned that Yousif was not a member of any political parties, labor unions or other organizations which were hostile to the Iraqi government, had never publicly criticized the Iraqi government while in Iraq, and did not hold any firm political opinions. Further, he had never been detained, interrogated, arrested, imprisoned or deprived of basic necessities while in Iraq. Yousif alleged that he resorted to bribery to get his passport since he was unable to obtain one because of his religion. He also represented that his brother had been imprisoned for about fifteen days because he had refused to study the Koran, the religious book of the Moslems.

The District Director denied Yousif's request for asylum, concluding that Yousif's representations were "self-serving in nature and without basis in fact." The District Director noted that the State Department in an opinion letter dated May 23, 1980 stated that Christians *as a group* were no longer at risk of being persecuted in Iraq.[1] Although Yousif produced a congressional report on Iraqi human rights practices, the District Director recognized that the report was only a general outline of conditions in Iraq and preceded the State Department's opinion letter. He concluded that Yousif failed to provide any documentation for his individual claims and, therefore, did not have a well-founded fear of persecution. Yousif's request for asylum was therefore denied. The District Director's decisions are not subject to appeal. 8 C.F.R. § 208.8(c).

On December 4, 1981, Yousif was charged with being a deportable alien since he had remained in the country beyond the authorized time, and was ordered to show cause as to why he should not be deported. A hearing was conducted on July 23, 1982 before an Immigration Judge. Yousif, who was represented by counsel at this hearing, conceded his deportability, but declined to name a country for deportation. When Iraq was designated by the INS, Yousif renewed his request for asylum, pursuant to section 208(a) of the Act, and also moved for withholding of deportation, pursuant to section 243(h) of the Act, 8 U.S.C. § 1253(h). The evidence before the Immigration Judge was essentially identical to that which has been outlined above except there were various newspaper clippings relating to the general upheaval and violent conditions in Iraq.[2] At the hearing, Yousif testified that he had been "terrorized," although he provided no explanation for this allegation. Yousif noted that the war between Iran and Iraq was a religious war between Moslems, but he believed Christians would be more hated than another Moslem. He also testified that he would be arrested and tortured by the Iraqi government because his passport contained a notation that he requested asylum in the United States.

1. This opinion letter, however, did acknowledge that individual cases of Christian persecution might exist.

2. The clippings were from the Amnesty International Report, the Assyrian Sentinel and the Detroit Free Press.

The Immigration Judge, in an August 26, 1982 decision, opined that Yousif considered it impossible to live in a Moslem country as a Christian with a Chaldean background, and that he feared being drafted and potentially killed as a result. However, the judge reasoned that Yousif had failed to substantiate his claims with testimony or documentary evidence. He also found that the alleged imprisonment of Yousif's brother was greatly exaggerated since his brother presently was a practicing electrician in Iraq. There was no evidence that the remainder of Yousif's family was experiencing difficulties of any kind. The judge therefore concluded that Yousif had failed to meet his burden under sections 208(a) and 243(h), but granted Yousif the right to voluntarily depart within thirty days in lieu of being deported.

Yousif perfected an appeal to the Board of Immigration Appeals on August 30, 1982. The Board, on March 12, 1984, dismissed the appeal, holding that Yousif had not established that he would be persecuted or that he had a well-founded fear of persecution. The Board considered a statement made by Yousif's sister, who had lived in Rome, Italy as a refugee, regarding her problems with the Baath government and concluded that the statement did not support Yousif's personal claim. The Board granted Yousif voluntary departure if he departed within thirty days.

On June 26, 1984, Yousif filed a motion with the Board to reconsider, pursuant to 8 C.F.R. §§ 3.8 and 3.2. He argued that newly acquired evidence combined with previous testimony and documentation qualified him for asylum and withholding of deportation. With this motion, Yousif submitted an affidavit signed by his sister on June 25, 1984, which stated that Yousif had been pressured by high school students to join the Baath party and had been beaten. His sister alleged that Yousif had been forced to read the Koran and had been threatened with death, and that their father lost his hearing as a result of being beaten by high school students who had come to the house to harass Yousif. She further alleged that her brother originally entered the United States in order to receive medical treatment resulting from fear and anxiety. Yousif's sister had been in the United States since July 22, 1982 as a refugee.

The Board, construing Yousif's motion as a request to reopen or reconsider, denied the motion on August 20, 1984. The Board first concluded that Yousif had failed to show a clear probability of persecution and was therefore not entitled to withholding of deportation. Second, the Board found that Yousif did not qualify for a discretionary grant of asylum because he did not demonstrate a well-founded fear of persecution, whether assessed in terms of a " 'clear probability,' a 'realistic likelihood,' a 'reasonable possibility' or 'a good reason to fear' persecution." Further, the Board declined to reinstate the privilege of voluntary departure.

Yousif appeals from the Board's denial of his motion to reopen and reconsider. We have jurisdiction to review deportation proceedings, including a denial of a motion to reopen by the Board, pursuant to section 106(a) of the Act, 8 U.S.C. § 1105a(a). *See Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam); *Cheng Fan Kwok v. INS*, 392 U.S. 206, 211, 88 S.Ct. 1970, 1973, 20 L.Ed.2d 1037 (1968) (explaining *Giova* ). The only issues before this court are the denial of the motion to reopen or reconsider and the denial of voluntary departure.

## II.

The Board of Immigration Appeals has discretion under the regulations to reopen or reconsider deportation proceedings. 8 C.F.R. § 3.2 (1985). Deportation proceedings cannot be reopened, however, unless the "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing...." *Id.* Motions to reopen to apply for discretionary relief cannot be granted "unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing." *Id.*

*See also INS v. Jong Ha Wang*, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam). Unlike motions to reconsider, motions to reopen must be supported by "affidavits or other evidentiary material." 8 C.F.R. § 3.8(a).

■■ Further, a motion to reopen should not be granted unless the petitioner makes a prima facie showing that the statutory requirements for the underlying relief have been met. *Dolores v. INS*, 772 F.2d 223, 225 (6th Cir.1985) (per curiam); *Chavez v. INS*, 723 F.2d 1431, 1433 (9th Cir.1984). However, even if the petitioner meets his burden of showing a prima facie case of eligibility, the Board may, within its discretion, deny the motion. *Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir.1985). Accordingly, the Board's denial of a motion to reopen is reviewed under the abuse of discretion standard, *Aiyadurai v. INS*, 683 F.2d 1195, 1199 (8th Cir.1982); *Kashani v. INS*, 547 F.2d 376, 378 (7th Cir.1977); *Chavez*, 723 F.2d at 1433, and the Board's denial will be upheld unless it was an "unreasoned or arbitrary exercise of discretion," *INS v. Rios-Pineda*, — U.S. —, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985), or contrary to law. *Ahwazi*, 751 F.2d at 1122.

■■ Yousif supported his motion to reopen with his sister's affidavit. The Board did not make a finding, however, as to whether the proffered evidence satisfied the other requirements of 8 C.F.R. § 3.2. Rather, the Board reviewed the evidence to determine whether Yousif had made a prima facie showing of entitlement to or eligibility for the underlying relief requested. This is a permissible approach for reviewing motions to reopen, *see, e.g., Dolores v. INS*, 772 F.2d 223, 225 (6th Cir.1985) (per curiam) ("The INS has interpreted [8 C.F.R. §§ 3.2, 3.8(a)] to provide that reopening is not appropriate unless the alien makes 'a prima facie showing that the statutory requirements for the relief sought have been met.'"); *Moosa v. INS*, 760 F.2d 715, 720 (6th Cir.1985), and we will therefore review the evidence presented to determine whether Yousif made the necessary prima facie showings.

Since Yousif's request for asylum was renewed during a deportation hearing, we must determine, as a threshold matter, whether his request for asylum and withholding of deportation is to be considered as two separate claims, subject to two distinct standards, or whether his request is only to be considered a request for withholding of deportation. This question requires an analysis of 8 C.F.R. § 208.3(b) and Circuit precedent.

Section 208.3(b) provides that asylum requests filed under section 208 of the Act "shall also be considered as requests for withholding exclusion or deportation pursuant to section 243(h) of the Act." In *Dally v. INS*, 744 F.2d 1191, 1196 n. 6 (6th Cir. 1984), this court held that section 208.3(b) transformed asylum requests into requests for withholding of deportation relief when deportation proceedings had already been commenced. As a result, the petitioner was deemed to have raised one claim subject to one set of requirements. This conclusion was also reached in *Nasser v. INS*, 744 F.2d 542, 543 n. 1 (6th Cir.1984) and *Shamon v. INS*, 735 F.2d 1015, 1016 (6th Cir.1984) (per curiam).

However, in *Dolores v. INS*, 772 F.2d 223, 225 (6th Cir.1985) (per curiam), another panel of this Circuit reasoned that section 208.3(b) required that a request for asylum made after the institution of deportation proceedings be considered both a request for asylum under section 208 and a request for withholding of deportation under section 243(h). Therefore, this panel must decide which interpretation of section 208.3(b) to follow since these cases present a direct conflict.

■■ The only Supreme Court case to have dealt with regulation 208.3(b) is *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). There, the Court made the following observations:

We note that when such asylum requests are made after the institution of deportation proceedings, they "shall *also* be considered as requests" under

§ 243(h). 8 C.F.R. § 208.3(b) (1983) (emphasis supplied). This does not mean that the well founded fear standard is applicable to § 243(h) claims. Section 208.3(b) simply does not speak to the burden of proof issue; rather, *it merely eliminates the need for filing a separate request for § 243(h) relief if a § 208 claim has been made.* *Id.* at 423 n. 18, 104 S.Ct. at 2497 n. 18 (emphasis added). This language indicates that the request for asylum survives. The intent behind promulgating section 208.3(b) was to eliminate the need to file two separate claims; there is no indication that requests for relief under section 208 cannot be made once deportation proceedings are initiated. When a petitioner requests asylum relief, section 208.3(b) requires the request *also* be construed as a request for withholding of deportation; therefore, each claim must be reviewed individually. All other circuits which have examined this question are in accord with this interpretation. *See Sarvia-Quintanilla v. United States INS,* 767 F.2d 1387, 1391 (9th Cir. 1985); *Chavarria v. United States Department of Justice,* 722 F.2d 666 (11th Cir. 1984); *Sotto v. United States INS,* 748 F.2d 832, 834 (3d Cir.1984); *Ramirez-Osorio v. INS,* 745 F.2d 937, 941 (5th Cir.1984); *Carvajal-Munoz v. INS,* 743 F.2d 562, 568 (7th Cir.1984).

Since *Dolores* is in accord with the Supreme Court's opinion in *Stevic,* as well as the other circuits, we choose to follow it. Therefore, we will review Yousif's request for asylum as well as his request for withholding of deportation in determining whether Yousif made a prima facie showing for purposes of his motion to reopen.

## A. WITHHOLDING OF DEPORTATION

■ Section 243(h) of the Act, 8 U.S.C. § 1253(h), provides in pertinent part:

(1) The Attorney General *shall not* deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

(Emphasis supplied). This statute mandates that deportation be withheld if an alien satisfies the statutory criteria. It is the alien's burden to show an entitlement to withholding of deportation, 8 C.F.R. § 242.17(c), and the alien satisfies this burden only upon showing a "clear probability of persecution" were he returned to his home country. *See generally INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). To meet this burden, the alien must establish that it is "more likely than not that [he] would be subject to persecution." *Id.* at 424, 104 S.Ct. at 2498. In the instant case, the Board found that Yousif had failed to satisfy his burden and was not entitled to withholding of deportation; on review, we must decide whether the Board's determination is supported by substantial evidence. *Bolanos-Hernandez v. INS,* 749 F.2d 1316, 1320 n. 8 (9th Cir.1984); *Carvajal-Munoz v. INS,* 743 F.2d 562, 569 (7th Cir.1984); *Chavarria v. United States Department of Justice,* 722 F.2d 666, 670 (11th Cir.1984).

■ It has long been recognized in our Circuit that an individual may not rely solely on general descriptions of upheaval in his home country to satisfy the clear probability of persecution standard. *See Youkhanna v. INS,* 749 F.2d 360, 361 (6th Cir. 1984). Rather, to establish that *"he as an individual* will be subject to persecution ... [a]n alien must show that he will be singled out for persecution or some other 'special circumstances' before relief can be granted." *Dally v. INS,* 744 F.2d 1191, 1195–96 (6th Cir.1984) (original emphasis).

■ The petitioner in the instant case has failed to come forth with credible evidence to support his claim of individual persecution were he to be returned to Iraq. His request for relief is principally premised on his ethnic origin and religious beliefs; however, there is a complete lack of support for his claim that Christians or Chaldeans *as a group* are being persecuted. The State Department is of the opinion

that deportation should not be withheld on this ground alone.

■ The only other evidence that supports his claim is his sister's affidavit. This affidavit does not correspond to the petitioner's own testimony, however. Yousif was given more than one opportunity to explain why he believed he would be singled out for bad treatment, but he never described any of the incidents expressed by his sister. Even if this affidavit were considered credible, harassment by students is probably inadequate to satisfy the clear probability standard. *See Sarkis v. Sava,* 599 F.Supp. 724, 726 (E.D.N.Y.1984). Therefore, the Board's determination that Yousif had failed to show an entitlement to withholding of deportation is supported by substantial evidence and its decision to not reopen the deportation proceedings on this claim was not an abuse of discretion.

## B. ASYLUM

■ Requests for asylum are filed pursuant to section 208(a) of the Act, 8 U.S.C. § 1158(a), which provides:

The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

In order to qualify for a discretionary grant of asylum, therefore, an alien must be a "refugee" as defined by 8 U.S.C. § 1101(a)(42)(A). This definition provides:

The term "refugee" means (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country *because of persecution or a well-founded fear of persecution* on account of race, religion,

nationality, membership in a particular social group, or political opinion....

(Emphasis supplied).

The INS asserts that this Circuit has determined that a "well-founded fear of persecution" standard, included in the definition of refugee, is precisely the same as the "clear probability of persecution" standard used in section 243(h) claims. The INS relies on *Reyes v. INS,* 747 F.2d 1045 (6th Cir.1984), *vacating* 693 F.2d 597 (6th Cir.1982), *cert. denied,* — U.S. —, 105 S.Ct. 2173, 85 L.Ed.2d 491 (1985), which states that the Supreme Court in *Stevic* "held that *an alien seeking asylum* must demonstrate a clear probability of persecution." 747 F.2d at 1046 (emphasis added). However, the Court in *Stevic* concluded its opinion with the following remarks:

Today we resolve one of those problems by deciding that the "clear probability of persecution" standard remains applicable to § 243(h) withholding of deportation claims. We do not decide the meaning of the phrase "well-founded fear of persecution" which is applicable by the terms of the Act and regulations to requests for discretionary asylum. That issue is not presented by this case.

467 U.S. at 430, 104 S.Ct. at 2501. It is clear from this passage that deciding the meaning of the phrase "well-founded fear of persecution" was expressly reserved by the Court in *Stevic.* Our reading of *Stevic* convinces us to follow the cases in our Circuit which recognize this aspect of *Stevic,* holding that different standards apply to requests under sections 243(h) and 208(a). *See, e.g., Youkhanna v. INS,* 749 F.2d 360, 362 (6th Cir.1984); *Dolores v. INS,* 772 F.2d 223, 226 (6th Cir.1985) (per curiam). Therefore, we reject the INS's assertion that our Circuit has equated the well-founded fear standard with the clear probability standard, despite our awareness of the language in *Reyes.*

■ In *Youkhanna,* we held that the well-founded fear standard is more generous than the clear probability standard. Although the petitioner may prevail upon

establishing a subjective fear of persecution, the petitioner's assertions of fear must nonetheless be supported by objective evidence. 749 F.2d at 362. This standard is easier to satisfy than the clear probability standard "because it can be satisfied by credible subjective evidence and because the fear may be based upon group characteristics such as the petitioner's religion." *Dolores*, 772 F.2d at 226. *See also Carvajal-Munoz v. INS*, 743 F.2d 562 (7th Cir. 1984) (well-founded fear standard is more generous than clear probability standard); *Cardoza-Fonseca v. United States INS*, 767 F.2d 1448, 1451 (9th Cir.1985), *cert. granted*, — U.S. —, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986) (same) (citing *Argueta v. INS*, 759 F.2d 1395, 1396–97 (9th Cir. 1985)). *But see Sotto v. United States INS*, 748 F.2d 832, 836 (3d Cir.1984) (the two standards are equivalent) (citing *Rejaie v. INS*, 691 F.2d 139, 146 (3d Cir.1982)). The conclusion that the well-founded fear standard is easier to satisfy is logical since an alien requesting asylum merely seeks to be found *eligible* for a discretionary grant of asylum, rather than claiming *entitlement* to a withholding of deportation. *See Cardoza-Fonseca*, 767 F.2d at 1451–52.

■ The Board, in denying Yousif's motion to reopen or reconsider, stated:

In the case before us we find that the respondent has failed to adequately substantiate his claim to a well-founded fear of persecution, whether his claim is assessed in terms of demonstrating a "clear probability," a "realistic likelihood," a "reasonable possibility" or a "good reason to fear" persecution. We find no adequate demonstration that this alien's claimed fear of persecution based on his religion, membership in a particular social group, and political opinion is well-founded.

Although we cannot condone the Board's use of multiple standards in assessing whether an alien has established a well-founded fear of persecution, making judicial review more difficult, *see Cardoza-Fonseca*, 767 F.2d at 1453–54, it is clear that Yousif has failed to present credible evidence to support his claim that he is being singled out for persecution, and he has failed to demonstrate that his fear of being persecuted as a Chaldean Christian is well-founded. Therefore, the Board's refusal to reopen Yousif's deportation proceedings was not an abuse of discretion.

### III.

■ Yousif also argues on appeal that the Board erred in refusing to reinstate his privilege to depart voluntarily. The Board's refusal to reinstate voluntary departure is reviewed under an abuse of discretion standard, *see, e.g., Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir.1985); *Muigai v. United States INS*, 682 F.2d 334, 337 (2d Cir.1982); *Aiyadurai v. INS*, 683 F.2d 1195, 1199 (8th Cir.1982), and we find that the Board did not abuse its discretion in refusing to reinstate voluntary departure. The petitioner relies solely on the merits of his underlying claims to support his assertion that voluntary departure should have been granted. Since the Board found his claims meritless, we cannot hold that the Board abused its discretion in denying petitioner permission to depart voluntarily; petitioner has been granted several opportunities to do so, but he has declined to take advantage of those opportunities.

Accordingly, the Board's denial of petitioner's motion to reopen and its refusal to reinstate the privilege of voluntary departure are AFFIRMED.