Edmundo Omar
CASTANEDA–HERNANDEZ,
Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 86–3080.

United States Court of Appeals,
Sixth Circuit.

Submitted Nov. 17, 1986.

Decided Aug. 21, 1987.

Fritz M. Vammen, Quiggle and Thompson, Little Rock, Ark., for Castaneda-Hernandez.

David V. Bernal, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Washington, D.C., Richard Evans, Alison Drucker, Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, for INS.

Before MERRITT and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.

MERRITT, Circuit Judge.

In this case arising under § 208(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1158(a)(1982),[1] the main question presented is whether the Board of Immigration Appeals correctly determined that petitioner was not eligible for asylum.

### I.

Petitioner is a 24 year-old native and citizen of El Salvador. He entered the United States on or about April 4, 1982 near Del Rio, Texas. On May 13, 1983, the Immigration and Naturalization Service issued an Order to Show Cause against petitioner charging that petitioner had entered the United States in violation of § 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2).[2] Rec. 121. Petitioner's deportation hearing convened on July 13, 1983. The immigration judge advised petitioner of his rights, after which petitioner admitted the allegations and conceded deportability. Petitioner later filed a completed Form I–589 asylum application which serves as an application for withholding of deportation under § 243(h)(1) of the Act[3] and for asylum under § 208 of the Act. 8 C.F.R. § 208.3(b); *INS v. Stevic*, 467 U.S. 407, 423 n. 18, 104 S.Ct. 2489, 2497 n. 18, 81 L.Ed.2d 321 (1984).

On his application, petitioner indicated that following primary school he attended one year of secondary school at the National Institute of Santa Ana in 1979–80. He stated that he left El Salvador on August 1, 1980 without exit permission—"[t]he violence had become so extreme that too many people were wanting to leave El Salvador." Rec. 123. He stated that he did not obtain a U.S. visa since "[t]he expense is prohibitive" and "[v]isas were [being] denied because of the political situation." *Id.* Petitioner spent 18 months in Mexico after leaving El Salvador without applying for asylum there and stated that he had "intended to come to the United States, but it was necessary for me to make some money to continue my journey." Rec. 124.

In his request for asylum, petitioner explained the reason he would be subject to persecution as follows:

1. Section 208(a), 8 U.S.C. § 1158(a), reads:
   The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.
   Section 1101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A), reads in pertinent part:
   The term "refugee" means (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a *well-founded fear of persecution* on account of race, religion, nationality, membership in a particular social group, or political opinion....
   (emphasis added).

2. Section 241(a)(2), 8 U.S.C. § 1251(a)(2), provides:
   (a) Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—

   ....

   (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States....

3. Section 243(h)(1), 8 U.S.C. § 1253(h)(1), provides:
   The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

All young men who are not in the military are subject to persecution. The level of political friction is such that no one is presumed to be neutral. A young man who is not or has not been a member of the military is presumed to be subversive and subject to imprisonment, torture or death by the military or paramilitary authorities.

*Id.* Petitioner further stated that "I am a young man and those who have been as actively critical of the policies of the Salvadoran government as I have been have suffered brutal persecution." *Id.*

In an attachment to the application, petitioner enumerated three reasons for his desire to leave El Salvador. Rec. 126. First, he again emphasized that "just being a young person meant that I had to always be careful of the authorities." *Id.* Second, he described an incident in which "one day, some men from the government with their faces covered picked me up from the center where I studied and hit me and a friend as we were walking. One of them took out a gun and put it in my mouth...." *Id.* Third, he referred to a subsequent threat by these individuals: "Later they told the two of us whom they had taken that we had to work with them.... and that if we didn't work with them that any day they would look for us to pay us back for not wanting to work with them." *Id.*

On February 21, 1984, Immigration Judge J.P. Vandello entered his decision granting three months of voluntary departure but denying asylum and withholding of deportation. The immigration judge found that petitioner's claim of persecution "must fail even under the most lenient standard." JA 6. Immigration Judge Vandello analyzed petitioner's claim as resting "on three cornerstones: that he is a young male, that he was a member of the Organization of Secondary Students, and that his departure from El Salvador will lead to his persecution." *Id.* Commenting that conscription of young men is a sovereign prerogative, the immigration judge cited several cases to the effect that young urban males do not constitute a social group within the meaning of the Act. He also concluded that petitioner "had not shown

that his alleged pamphlet activities [as a member of the Organization of Secondary Students] would make him an enemy of the government," pointing out that those who detained him in August 1980 need not have released him. JA 7. Lastly, he stated that despite "isolated incidents described in publications" found among the exhibits, there was "no showing that a returning male is any more or less likely to be the victim of random violence than any other member of society." *Id.* Therefore, he concluded, "I find that taking all testimony and evidence as true, and viewing it in a light most favorable to [petitioner], he has nonetheless failed in his burden under any standard." *Id.*

Petitioner appealed this decision to the Board of Immigration Appeals on March 5, 1984, alleging two errors below: (1) "in finding that a young urban male from El Salvador who has never served in the military is not a member of a social group subject to a well-founded fear of persecution," and (2) "in finding that a young Salvadoran male who had been detained, threatened, interrogated and beaten by men who identified themselves as [belonging] to the 'Death Squads' had not established a well-founded fear of being singled out for persecution." Rec. 21.

The Board rendered its decision on December 31, 1985. It stated that petitioner "has not met the statutory standard of eligibility for asylum, regardless of whether his claim is assessed in terms of demonstrating a 'clear probability,' a 'realistic likelihood,' a 'reasonable possibility,' or a 'good' or 'valid reason to fear' persecution. We find no adequate demonstration that this alien's claimed fear of persecution, based on any of the enumerated grounds within the Act for which asylum and withholding of deportation may be granted, has been shown." JA 10. Specifically, the Board saw no connection between petitioner's political activities and an incident in August 1980 during which he was interrogated by armed men in civilian clothes:

> ... [petitioner] did not claim nor does the record otherwise show that the government was aware of his activities in dis-

tributing the pamphlets or that he was ever arrested and persecuted because of these activities.... [Petitioner] has not shown that the government has any interest in him or that his participation in a student organization more than five years ago represents a present risk of harm.

JA 11.

The Board also pointed out that petitioner's claim in part derived from "his previous status as a student," a status he need not resume. JA 12. Moreover, it rejected his argument that he would be persecuted as a member of a "particular social group," whether this group was identified as being composed of young males, students, or students belonging to student organizations. Rather, it viewed his departure from El Salvador as "premised on the general condition of anarchy and civil strife." JA 12. Moreover, the Board noted that petitioner "admitted that he entered the United States because of the economic opportunities here," after living and working—but not seeking asylum—in Mexico for almost 20 months. JA 11–12. The Board found petitioner's failure to seek asylum in Mexico, plus his failure to seek asylum in the United States until 17 months after his entry and only after he was served with an Order to Show Cause, as "inconsistent with ... a well-founded fear of persecution." *Id.*

Having determined that petitioner had not been singled out in the past due to political opinion, the Board concluded as follows:

> ... the conditions which exist in El Salvador affecting the entire population ... do not support ... [petitioner's] claim of persecution on the basis of 'membership in a particular social group.' We conclude that ... [petitioner's] departure from El Salvador resulted from the general conditions of violence prevalent there and that his present desire to re-

main in the United States is based on the economic opportunities available here.

JA 12 (citation omitted).

## II.

We decide petitioner's asylum claim in light of the Supreme Court's recent decision in *INS v. Cardoza-Fonseca,* —— U.S. ——, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). In that case the Supreme Court was faced with the specific question of whether the standard of proof for withholding of deportation under § 243(h) of the Act—"clear probability" of persecution—governed asylum applications under § 208(a) of the Act.[4] In the lower court decision, the Ninth Circuit held that the "well founded fear" standard under the asylum provision, § 208(a), is more generous than the deportation standard under § 243(h) in that it requires asylum applicants to show either past persecution or "good reason" to fear future persecution as opposed to a "clear probability" of persecution. *Cardoza-Fonseca v. INS,* 767 F.2d 1448 (9th Cir.1985). The Ninth Circuit stated:

> The term "clear probability" requires a showing that there is a greater-than-fifty-percent chance of persecution. In contrast, the term "well-founded fear" requires that (1) the alien have a subjective fear, and (2) that this fear have enough of a basis that it can be considered well-founded. While in the latter case there must be some objective basis for the fear, contrary to the requirement of the "clear probability" test the likelihood of persecution need not be greater than fifty percent.

767 F.2d at 1452–53.

Affirming the Ninth Circuit decision, the Supreme Court held that Congress intended a more generous standard for asylum under § 208 than the "clear probability" standard applicable to § 243(h) under the Court's earlier decision in *INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). The Court explained the lower threshold for asylum eligibility as follows:

---

**4.** Prior to the Supreme Court decision in *Cardoza-Fonseca,* there had been a split within this Circuit as well as among the circuits on this

issue. *See Gumbol v. INS,* 815 F.2d 406, 409 nn. 1–2 (6th Cir.1987) (citing relevant cases).

There is simply no room in the United Nations' definition [of refugee, essentially the same as the Immigration and Naturalization Act definition] for concluding that because an applicant only has a 10% chance of being shot, tortured, or otherwise persecuted, that he or she has no "well-founded fear" of the event happening.... As we pointed out in *Stevic*, a moderate interpretation of the "well-founded fear" standard would indicate "that so long as an objective situation is established by the evidence, it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility."

107 S.Ct. at 1217 (citation omitted).

Yet the Supreme Court avoided any definitive attempt to define the phrase "well-founded fear." The Court stated:

There is obviously some ambiguity in a term like "well-founded fear" which can only be given concrete meaning through a process of case-by-case adjudication. In that process of filling " 'any gap left, implicitly or explicitly by Congress,' " the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program.

107 S.Ct. at 1221–22 (citations omitted).

In the case before us, both the immigration judge and Board ostensibly steered clear of the *Cardoza-Fonseca* confusion of standards problem. As recited in the facts above, the immigration judge found that petitioner "has nonetheless failed in his burden under any standard," or "under even the most lenient standard," JA 6–7, and the Board found that petitioner "has not met the statutory standard of eligibility for asylum, regardless of whether his claim is assessed in terms of demonstrating a 'clear probability,' a 'realistic likelihood,' a 'reasonable possibility,' or a 'good' or 'valid reason to fear' persecution." JA 10.

Nonetheless, the Board cannot foreclose judicial review of its decision merely because it invoked the magical words suggesting a recognition of the difference in standards for asylum and withholding of deportation. *See Martinez-Sanchez v. INS,* 794 F.2d 1396, 1398 (9th Cir.1986). Under the Supreme Court's decision in *Cardoza-Fonseca,* the issue remains whether Board language notwithstanding, the Board *in fact* applied a more generous standard to evaluate petitioner's asylum claim.

On the basis of the record before us, we are doubtful that the Board properly evaluated petitioner's asylum claim under a more generous standard.[5] Specifically, we are concerned that the Board did not directly address the several affidavits of record dating from the early 1980's which raise the distinct possibility that an individual in

**5.** The dissent takes "judicial notice that a more democratically inclined government has been popularly elected to seek to bring an end to conflict there." Opinion of Judge Wellford at Page 1533. We can hardly decide petitioner's asylum on this kind of judicial notice: the fact that there have been elections in El Salvador does not shed light on the issue of the level of extant civil strife in that country and the extent to which individuals in petitioner's situation would be subject to persecution upon their return to El Salvador. As we indicate in our remand order, we require further development of the record on "how present conditions in El Salvador affect petitioner's claim," not casual reliance on judicial notice of a fact that is in no way dispositive of the asylum question before us.

The dissent notes further that "[t]he State Department, having been consulted, rendered an advisory opinion unfavorable to petitioner's contentions...." *Id.*

The State Department opinion is prescribed by regulation in asylum cases. 8 C.F.R. § 208.7. In this case, the State Department states without elaboration in one paragraph:

We have carefully reviewed the information submitted as part of the application. On this basis, we believe that the applicant has failed to establish a well-founded fear of being persecuted in El Salvador on account of race, religion, nationality, membership in a particular social group, or political opinion, as provided in United Nations Convention and Protection Relating to the Status of Refugees. Consequently, the applicant does not appear to qualify for asylum.

Rec. 146. This conclusory advisory opinion does not provide much assistance at all in evaluating petitioner's claim without further detailed analysis.

petitioner's position would have a well-founded fear of persecution upon returning to El Salvador.

For example, the record contains an affidavit from Jorge I. Dominguez, Professor of Government at Harvard University, stating that in his judgment "it is very likely that young men of Salvadoran origin and citizenship, who are living in the United States, would face a severe risk to their lives and to their personal freedom if they were returned to El Salvador against their will." Rec. 270. Dominguez suggested that young returning Salvadorans might face the possibility that "the government of El Salvador, or paramilitary right-wing forces that operate rather freely in that country now, will perceive these young men as their enemies and may shoot them or otherwise severely injure them." Rec. 270–71. Dominguez explained that these Salvadorans are vulnerable since "[i]t is the view of that regime and of the paramilitary right-wing groups, based on the mere fact that these young men have chosen to leave the country at this time, that such young men are seeking to plot the overthrow of the government." Rec. 271.

William M. Leo Grande, Director of Political Science at the School of Government and Public Administration at American University, reached similar conclusions. He stated that "[t]o be a man of military age and not to have served in the Armed Forces, in addition to having fled the country, is enough to create the suspicion that [such] individual is an opponent of the government. And to be suspected of being an opponent of the government in El Salvador, is to be in grave danger." Rec. 274.

Journalist Cynthia Arnson noted that "[i]t is further likely that a prolonged absence from the country will be construed as having served with the guerrillas, or having engaged in opposition political activities abroad. The fate of those in El Salvador who are suspected of the slightest opposition to the government is well known—arrest, torture, and even death." Rec. 267.

In light of the foregoing affidavits and other materials in the record, we are hard-pressed to agree with the Board's conclu-sions that (1) "[t]he [petitioner] has presented *no* objective evidence which demonstrates that he as an individual would be singled-out and targeted for persecution," or (2) "[t]here is *no* evidence ... which suggests the likelihood that he will be [persecuted] if returned to El Salvador." JA 12 (emphasis added). The Board also seems to be entirely too dismissive of petitioner's claim when it states that "the conditions which exist in El Salvador affecting the entire population, do not support [petitioner's] claim of persecution on the basis of 'membership in a particular social group.' " (citation omitted). *Id.*

### Remand Order

We remand this case to the Board with the following instructions. First, the Board should reconsider the case in light of the *Cardoza-Fonseca* decision with its clarification of the "well-founded fear" standard to be used now in deciding asylum claims. Second, the Board should provide a more detailed review of the affidavits and other materials in the record suggesting the possibility of a well-founded fear of persecution. *See, e.g., Dawood Haio v. INS,* 800 F.2d 90, 97 (6th Cir.1986). Finally, since we are remanding for other reasons, the Board should supplement the record in order to evaluate how present conditions in El Salvador affect petitioner's claim.

Accordingly, the case is remanded to the Board for further proceedings not inconsistent with this opinion.

WELLFORD, Circuit Judge, dissenting:

The Immigration Judge set forth the following pertinent facts in this case:

This record relates to a 20–year-old male respondent who is a native and citizen of El Salvador. He last entered the United States on April 4, 1982, at or near Del Rio, Texas. The respondent is charged with deportability under § 241(a)(2) of the act: entry without inspection.

At a hearing ..., the respondent, through counsel, admitted all factual allegations in the Order to Show Cause and

conceded deportability under the charge in question. Thus, deportability has been established based upon the admissions of the respondent alone. The respondent has filed a request for asylum ... [and] an asylum request urged during the course of a deportation hearing is also considered as a request for "withholding of deportation"....

....

The respondent testified that he attended the Colegio Bautista (elementary school) until 1979 at which time he enrolled in the Instituto Nacional de Santa Ana (secondary school). In March, 1979 (according to his application), he joined the Organization of Secondary Students. He stated that the purpose of this organization was to lower tuition and improve conditions in the schools. He stated that he had been involved in the distribution of pamphlets and assisting workers and students. He was involved in one protest concerning conditions in the schools. He stated that the organization is a national entity and that "almost all" Salvadoran students are members of this group.

Respondent recounted an incident which occurred August 2, 1980: a group of government officials in civilian clothing "captured" him and an associate in front of his colleagues, put them in a car, and took them away for questioning. They were struck and accused of being in anti-government groups. He stated that the men did not call for him and his associate by name, but that they were picked out of a large group of students. He said that he recognized the men as persons who had come to the school on several prior occasions with army officials. The officers told respondent and his friend that "we should work with them [so nothing would happen to us]."....

He recounted another incident where the National Police came to the school while he was playing basketball with a group of students. Two of the students were summoned and the others forced to lie down on the ground. They "captured" a colleague ("Teresa") and after her boyfriend protested, they opened fire on him and abducted Teresa.

... He stated that the student organization assisted the worker and farmer by printing pamphlets; however, his activities pertained only to school. The government eventually took the machinery away and jailed the most active members of the group.

The respondent described the conscription policies of the Salvadoran government. He stated that the legal age for the draft is 18 but that students of 14 and 15 years are routinely picked upon on the streets by army units and impressed into service. He stated that there were frequent visits made by army personnel where they attempted to recruit students. He stated in his testimony that he objected to violence and had a moral objection to military service. He admitted upon questioning by the trial attorney that he also simply did not want to go into the army.

Respondent stated that he fears persecution if returned to El Salvador because of his student activities, his possibility of being drafted, and due to the increased risk in Santa Ana because of the size of the city and the large number of military installation[s].

He testified that he fled to Mexico where he worked for more than one year. He stated that the Mexican government did not know of his existence and that he would have been considered to be an illegal migrant. He left Mexico and came to the United States in April of 1982. [He admitted that he entered the United States because of economic opportunities, not because of a fear of persecution.]

Respondent's testimony was substantially corroborated by Hugo Ernesto Gonzalez.....

Professor William Melvin testified that it is reasonable and rational for a young male to seek protection from the activities in El Salvador.....

... The overt clashes between the guerrillas and government forces and the clandestine violence of unknown origin

make for a dangerous situation for both the combatants and the private citizens. Due to their amenability to military service, young males bear a greater burden than the rest of society.

Petitioner seeks appellate review of the Board of Immigration Appeals' denial of his requests for asylum and withholding of deportation. The Immigration Judge and the Board both decided that the requests must fail *regardless of the standard of review applied.* The proper standard of review in this circuit seemed uncertain after *Yousif v. INS,* 794 F.2d 236 (6th Cir. 1986), *Dawood-Haio v. INS,* 800 F.2d 90 (6th Cir.1986), and *Youkhanna v. INS,* 749 F.2d 360 (6th Cir.1984), when this case was argued. The Supreme Court has now decided the standard to apply. The petitioner must establish a " 'well-founded fear of persecution,' " which is a more generous standard than showing "a clear probability of persecution." *INS v. Cardoza-Fonseca,* — U.S. —, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987).

Our court in *Youkhanna* and *Yousif* adopted the same standard which was later established in *Cardoza-Fonseca* in dealing with the request for an alleged "refugee" for "asylum" status. In these cases, and a number of others involving petitions of Iraqi citizens in this country who seek asylum from the possibility (or probability) of persecution in Iraq, or fear of serving in its armed forces which have been engaged in a major war for many years, our court had required "credible subjective evidence ... [which] may be based upon group characteristics." *Yousif,* 794 F.2d at 244. We have emphasized that subjective fears must be *well-founded* and that petitioner must show that "he is being singled out for persecution." *Id.* In *Youkhanna,* this court stated that the "well founded fear" standard involves the requirement of *specific* facts or detailed information showing "good reason to fear persecution." 749 F.2d at 362. Evidence in these and other Iraqi refugee or alien cases in this circuit have involved strong indicia of both political and religious persecution and fear of being involved in persistent warfare between major contending forces, and yet we have consistently affirmed denial of asylum in these cases. I see no reason to apply different and more lenient standards in cases of refugees from El Salvador, where in recent years we may take judicial notice that a more democratically inclined government has been popularly elected to seek to bring an end to civil conflict there.

In this case, as previously stated, both the Immigration Judge and the Board have found petitioner not to be entitled to relief regardless of whether the more lenient "well-founded fear of persecution" principle were to be applied, rather than a more stringent one. The State Department, having been consulted, rendered an advisory opinion unfavorable to petitioner's contentions (as in the Iraqi cases). The Immigration Judge decided that petitioner's claim "must fall under even the most lenient standard," (J/A 112), and that "he has nonetheless failed in his burden under *any* standard." (J/A 113) (emphasis added). The Board of Immigration Appeals has confirmed the Immigration Judge's determination.

Review has not been foreclosed in this case under the more lenient "well-founded fear" standard adopted in *Cardoza-Fonseca.* I am satisfied that the Board has properly evaluated petitioner's asylum claim, and that it has considered the entire record in making its decision. Petitioner has established little more than a desire to avoid military service and the fact that he is in the age group likely to be called on to serve. He has shown only that he was a student, and a member of a group to which most Salvadoran students belong, the purposes of which were to lower tuition and to improve conditions in the schools. Like many others, sadly, he also had witnessed, and had been victim of, an assault by persons he believed to be members of a police group.

I would AFFIRM the Board's decision.